IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 13, 2016 Session

## STATE OF TENNESSEE v. PATRICK WAYNE EVANS

**Appeal from the Circuit Court for Williamson County**
**No. IICR058012     Deanna B. Johnson, Judge**

_____

**No. M2015-00897-CCA-R3-CD – Filed July 21, 2016**

_____

The Defendant, Patrick Wayne Evans, pleaded guilty to vehicular homicide by impairment, a Class B felony, with an agreed sentence length of eight years.  After a sentencing hearing, the trial court ordered that the Defendant serve his eight year sentence in confinement.  The Defendant appeals, asserting that the trial court: (1) erroneously relied upon enhancement factors that are not applicable to the Defendant's offense; (2) erroneously admitted improper evidence at the sentencing hearing; (3) failed to properly consider mitigating factors; (4) erroneously found the Defendant had no potential for rehabilitation; and (5) failed to comply with the purposes and principles of sentencing when it denied a sentence of "split confinement."  After a thorough review of the record and the applicable law, we reverse and remand to the trial court for re-sentencing.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, J., joined.  THOMAS T. WOODALL, P.J., concurs in result only.

David H. Veile, Franklin, Tennessee, for the appellant, Patrick Wayne Evans.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Kim Helper, District Attorney General; and Carlin C. Hess, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
# I. Facts

This case involves a car crash resulting in the death of Ralph Calendine, ("the victim"). A Williamson County grand jury indicted the Defendant for three counts of vehicular homicide, charged alternatively, vehicular assault by impairment, and possession of a firearm while under the influence of alcohol. The State and the Defendant entered a plea agreement that provided for the Defendant to plead guilty to vehicular homicide by impairment, a Class B felony, with the remaining charges to be dismissed. The Defendant agreed to an eight-year sentence, with the manner of service of the sentence to be determined by the trial court after a sentencing hearing.

At the guilty plea submission hearing, the State made the following offer of proof as a basis for the trial court's acceptance of the Defendant's guilty plea:

[T]here was a vehicle collision on December 30th, of 2013 around 6:00 p.m., here in Williamson County on Lewisburg Road, near Highway 840. [The Defendant] was the driver of the vehicle in the crash. And the passenger of the other vehicle, Mr. Ralph Calendine, was pronounced dead on the scene.

Officers from the Tennessee Highway Patrol made their way to that location and identified [the Defendant] as the driver of one of the vehicles. He had an odor of an alcoholic beverage about his person, bloodshot watery eyes, admitted to drinking prior to driving his vehicle, and preformed [sic] Field Sobriety Test. He did not perform those to the Officer's satisfaction.

T.H.P. Crash Reconstructionist will testify that the cause of the vehicle collision and the cause of Mr. Calendine's death was the driving behavior of [the Defendant], specifically that he had turned into the lane of travel at the moment that the Calendines were driving down Lewisburg Pike. And that he was at fault in the accident.

He agreed to a blood alcohol test that came back at above 20 grams - - .20 grams percent Ethyl alcohol. And Mr. Calendine's death, as I said, was proximate result of [the Defendant]'s driving behavior. And that occurred here in Williamson County.

At the sentencing hearing, the parties presented the following evidence: Joseph T. Massengill, a Tennessee Highway Patrol officer, testified that, on December 30, 2013, he was dispatched to a two-vehicle injury crash. When he arrived, he observed a 2013 Kia Soul on the left shoulder "next to the off ramp from 840 and a 2008 Chevrolet Silverado facing southwest in the southbound travel lane." He stated that it appeared to have been a head-on collision with severe damage to the driver's side of each vehicle. Trooper

2

Massengill recalled that medical personnel and Sheriff's deputies were already present at the scene. He approached the Kia where first responders were attempting to extricate the driver, who was the victim's wife, Lynda Calendine. The victim had already been removed from the vehicle.

Trooper Massengill testified that, after making contact with Mrs. Calendine, he approached the Defendant, who appeared to be disoriented and confused and was standing a distance away from the Kia Soul. Trooper Massengill recalled that the Defendant had a slight odor of alcohol about his person and admitted to drinking two beers. The Defendant told Trooper Massengill that he had been driving from Franklin to Spring Hill. The Defendant indicated that he was diabetic and so Trooper Massengill had medical personnel at the scene assess the Defendant before conducting field sobriety tasks. Trooper Massengill stated that the Defendant performed the tasks "poorly." The Defendant was placed under arrest for driving under the influence. A loaded gun was located inside his vehicle.

Trooper Massengill testified that, based upon his investigation at the scene, he determined the Defendant was at fault in the accident. While still at the crash scene Trooper Massengill learned that the victim had died either en route to the hospital or at the hospital. Trooper Massengill said that he then requested that the THP Critical Incident Response Team ("CIRT Team") come to the scene for further assessment.

On cross-examination, Trooper Massengill agreed that the Defendant was fully cooperative with the investigation. He further confirmed that the conclusion of the CIRT Team was that the crash occurred because the Defendant failed to yield to oncoming traffic when making a left turn. Trooper Massengill stated that the Defendant had a head injury as a result of the crash but refused medical treatment.

The victim's wife and three sons testified at the hearing about the impact of the loss on each of them, their families, and their community. Approximately six years before, the victim and his wife had moved to Chapel Hill in retirement to be near their four grandchildren who lived in the Brentwood area. The victim was sixty-six years old, had been married forty-five years, had three sons, and four grandchildren. During his career he served his country and his community in the army, as a police officer, a minister, and a missionary. About the impact on the family, one of the victim's sons stated, "This loss clearly continues to be felt profoundly. There is not a day that goes by that I don't think about my father and my mother and my children that have continued to struggle with the loss of their grandfather." The victim's family expressed concern about a reoccurrence and urged the trial court to take preventative measures to protect others from a senseless loss. Lynda Calendine, the victim's wife and the driver at the time of

the accident, testified that she underwent two knee operations and an arm surgery due to bone fractures caused by the crash.

Following the State's proof, the Defendant made the following statement of allocution:

[My attorney] told me that I could speak to you today about me. Please do not take this as me making any excuses. I have no excuses for drinking, driving, and causing the accident that took the life of Mr. Calendine. I would like to start by saying I'm very sorry for my crime and the loss of Mr. Calendine's life and how it has affected his family.

I know words can not express how hurt everyone feels and how sorry I am that I created this tragedy. . . . And for the hurt and pain I afflicted on everyone involved. Many people have been hurt and affected by my mistake on that night. And I know that it changed their lives. I apologize with all my heart and soul to first, the Calendine family and their friends. Next to my family because I have hurt them bad. And all my friends and my team members that I have let down.

My entire life I have always worked harder to support my family and help others when they needed it. I would like to tell you what led up to December 30, 2013. I grew up in Indiana. My mother left when I was six and my father raised me and my sister. My father is a great man. He is a great example. He worked extremely hard for our family and he taught me what it means to help others. Please do not let my crime reflect on my dad. He raised me better than this.

In 1988 I began working at Discount Labels in Indiana. I started at the bottom, but over 24 years I worked my way up to Vice-President of Operation over many plants. At first everything was wonderful, but my health began to get bad. My stress level was high due to my position I held at work. During the tough economic times, we had to let a lot of people go from their jobs. This was diff -- very difficult for me and it broke my heart to have to do that. But finally, it was my turn and they let me go.

Me and my wife were blessed when I was offered a job in Franklin, Tennessee as director of operations over the Franklin and Memphis plants. Everything was going good, our numbers were up, we were paying bonus to our employees and the team there called me Coach. Then it changed. They brought in a new president and started cutting head count, and I had

4

to fire some of our veteran people. The day of the accident, I was helping a former boss of mine move some boxes from the plant to a storage area. He called me that morning to ask me if I would help and since I had a truck, I said of course I would. I always tried to help when anybody needed it. We loaded the boxes and we took them to a storage area, and we then went to a place where he was a member of in Franklin and I drank and I smoked a cigar. And then I made the worse decision I've ever made in my life.

Though, I don't remember it, I chose to drive. I can't remember much that night, except for seeing a lot of lights and bleeding from my head. I remember talking with the Trooper and agreeing to volunteer to give him blood. He was a nice guy and I was very respectful with him and was compliant with his directions. And I thank him for the work on this case.

I later found out that I was impaired and I was devastated. You know it is one thing to know you caused an accident that took a life and injured another. But now, to know you were drunk when it happened was sickening to me and I was confused. It was literally destroying me inside. It was all I could think about. It kept me up at night. And I've never stopped thinking about what I done. Again, words can not express how sorry I am and how horrible I feel what I did that night.

Since the accident my life has changed dramatically. My wife and I have been saved and got baptized. I have -- I have not had a sip of any alcohol for over a year and it doesn't even sound appealing to me anymore. I don't take high blood pressure medicine anymore. And I'm only taking 25 percent of my medication for diabetes. My weight went from 305 to now I'm about 210. I have completely changed my life. But I do not take what has happened lightly. I will do everything in my power to prevent this from happening to others and families if given the chance. I will go into the community, I will share my story. So that others, they know how seriously their decisions can affect and harm others. If I could go back to that day, I would. This is one situation that people just say it won't happen to me, but it did. It happened to Mr. Calendine's family.

And it is a huge mistake to cause an unnecessary tragedy. I have to live with this guilt and regret for the rest of my life. And I vow to live a better life serving God and continue to help others. I'm truly and deeply sorry for the hurt to these folks and to my family and friends.

5

The Defendant's cousin and two former colleagues testified on the Defendant's behalf. All three witnesses testified that the Defendant was a hard-working, honest man who took responsibility. The witnesses all stated that the Defendant would successfully complete a sentence involving probation if ordered. In addition, the trial court admitted numerous letters of support from the Defendant's family members and friends.

The Defendant's attorney submitted to the trial court that the Defendant was a strong candidate for a sentence involving split confinement. The Defendant's attorney acknowledged that the seriousness of the offense required a period of incarceration but asked the trial court to consider the Defendant's entire life and circumstances and not just the horrible events of one day. The State responded that the Defendant was not presumed a favorable candidate for an alternative sentence pursuant to Tennessee Code Annotated section 40-35-102(6)(a). The State conceded that the Defendant did not have a long history of criminal conduct or frequent or recent applications of probation; however, the State asserted that, a probated sentence would undermine the seriousness of the deterrence effect on other Williamson County citizens. The State noted that there were over 700 DUI charges in Williamson County in the previous year, noting that the Defendant's charge was the only one involving a death. After hearing the arguments and considering the evidence, the trial court ordered the Defendant to serve his eight-year sentence in the Tennessee Department of Correction. It is from this judgment that the Defendant appeals.

## II. Analysis

The Defendant asserts that the trial court: (1) erroneously relied upon enhancement factors that are not applicable to the Defendant's offense; (2) erroneously admitted improper evidence at the sentencing hearing; (3) failed to properly consider mitigation factors; (4) erroneously found that the Defendant had no potential for rehabilitation; and (5) failed to comply with the purposes and principles of sentencing when it denied split confinement. We consider each issue in turn.

In sentencing decisions, "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise* 380 S.W.3d 682, 708 (2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold

the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise,* 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

Our Supreme Court extended the *Bise* standard to appellate review of the manner of service of the sentence. The Court explicitly held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). We are also to recognize that the defendant bears the burden of demonstrating that the sentence is improper. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2014); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2012).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within this class of offenders, "and who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of

evidence to the contrary." T.C.A. § 40-35-102(6). Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall *consider*" them. T.C.A.§ 40-35-102(6) (emphasis added).

Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103.

In a written order, the trial court made the following findings as to sentencing:

> In determining the appropriate sentence for this offense, this Court has considered the evidence presented at the Sentencing Hearing, the Sentencing Memoranda submitted by both parties, the letters of support submitted by [the Defendant], the Pre-Sentence Report, and [the Defendant's] allocution. The Court has also considered the arguments made as to the principles of sentencing, sentencing alternatives, and enhancement and mitigating factors. In addition, the Court considered the statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee.
>
> Furthermore, the Court has considered all of the principles and purposes of sentencing enumerated in Sections 40-35-102 and 40-35-103 of the Sentencing Reform Act of 1989 as well as the mitigating and enhancement factors enumerated in T.C.A.40-35-113 and T.C.A. 40-35-114. Pursuant to T.C.A 40-35-102 (1), "every defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense." Also, T.C.A. 40-35-102 (3) provides: "punishment shall be imposed to prevent crime and promote respect for the law by:

(A)  Providing an effective general deterrent to those likely to violate the criminal laws of this state;

(B)  Restraining defendants with a lengthy history of criminal conduct;

(C)  Encouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants; and

(D)  Encouraging restitution to victims where appropriate.

T.C.A. 40-35-102(3).

In the instant case, the Court has considered all of these factors and provisions.  The crime committed here was extremely serious — Vehicular Homicide, a Class B felony.  Mr. Calendine was killed as a result of this crime and Mrs. Calendine was seriously injured.  She endured much physical pain and suffering as a result of this crime and still endures it.  However, as she testified, her most severe pain and suffering is the emotional pain she endures as a result of the loss of her husband of 45 years.  This crime impacted many people.  Mr. Calendine's entire family has suffered and continues to suffer from his death.  His wife, his sons, and his grandchildren all suffer from this crime. Thus, the "seriousness of [this] offense" requires imposition of severe punishment — 8 years as a Range I Standard Offender, to serve.  T.C.A. 40-35-102(1).

Moreover, a prison sentence of 8 years in this case is necessary to "prevent crime and promote respect for the law."  T.C.A. 40-35-102(3).  Requiring a prison sentence in this case will "[p]rovide an effective general deterrent to those likely to violate the criminal laws in this state."  T.C.A. 40-35-102(3)(A).

The Court has also considered the principles enumerated in T.C.A. 40-35-103.  Here, "[c]onfinement is necessary to avoid depreciating the seriousness of the offense [and] confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses."  T.C.A. 40-35-103(1)(B).  As discussed above, the Court finds this offense to be extremely serious.  Also, driving under the influence is a serious problem in our community.  It is important that the Court send a message to others who would drive under the influence in hopes of deterring such

9

conduct and saving lives. In addition, the 8 year prison sentence imposed in this case is not "greater than that deserved for the offense committed" T.C.A. 40-35-103(2) and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed" T.C.A. 40-35-103(4).

The Court has also considered sections three, five, and six of T.C.A. 40-35-103 and believes an eight year prison sentence comports with those concerns as well. The Court has considered [the Defendant's] potential for rehabilitation or treatment and finds none. There was no evidence at the Sentencing Hearing that [the Defendant] is in need of treatment or rehabilitation. Indeed, he claimed during his allocution and in his written statement submitted to the Court that he no longer drinks alcohol. Additionally, there was no proof at trial that [the Defendant] is in need of any other type of treatment or rehabilitation.

The Court has also considered the sentencing alternatives outlined in T.C.A. 40-35-104 and elsewhere in the statute. The Court believes there are no alternatives to incarceration that would be appropriate in this case given: 1) the seriousness of the offense and the impact it has had on the Calendine family and the community; 2) the need to deter this type of behavior; and (3) the need to avoid depreciating the seriousness of the offense.

As stated above, the parties agreed [the Defendant] would receive an 8 year sentence as a Range I Standard Offender. The manner of service of that sentence was the primary issue before the Court. The parties addressed the enhancement and mitigating factors set out in the Sentencing Act which are used to determine the length of the sentence. Accordingly, the Court will address the enhancement and mitigating factors here. Pursuant to T.C.A. 40-35-114, the Court finds the following enhancement factors apply: (3) the offense involved more than one victim. Mrs. Calendine was severely injured and Mr. Calendine passed away. (6) the personal injuries inflicted upon . . . the victim were particularly great. Mrs. Calendine sustained severe injuries. (9) the defendant possessed or employed a firearm . . . during the commission of the offense. [The Defendant] had a .380 in his vehicle during the commission of this offense. (10) The defendant had no hesitation about committing a crime when the risk to human life was high. [The Defendant] had no hesitation about driving a vehicle when he was very intoxicated - an act which put many lives in danger.

10

Pursuant to T.C.A. 40-35-113, the Court finds that the following mitigating factors apply: (13) any other factors consistent with the purposes of this chapter. [the Defendant's] lack of criminal history serves as a mitigating factor. Also, [the Defendant's] strong work history and reputation as a helpful and caring person serve as mitigating factors. The Court finds that, although these mitigating factors apply, they do not warrant probation in this case.

As stated above, this crime has had a severe financial impact on the Defendant's family. In light of [the Defendant's] upcoming incarceration and the financial problems it will cause his family, the Court sees no reason to impose a fine in this matter. Therefore, no fine will be imposed.

Regarding loss of license, the Court finds that [the Defendant] shall lose his license for a period of five years. This time period is sufficient, but not greater than necessary, to accomplish the goals of sentencing. In addition, the Court has taken into consideration all of the sentencing factors discussed above in determining this aspect of [the Defendant's] sentence.

## A. Enhancement Factors

The Defendant asserts and the State concedes that the trial court misapplied enhancement factor (3), the offense involved more than one victim, enhancement factor (6), the personal injuries inflicted were particularly great, and enhancement factor (8) the defendant failed to comply with the conditions of a sentence involving release into the community. T.C.A. § 40-35-114 (2014). The Defendant also contests the trial court's application of enhancement factor (9), possession of a firearm during the commission of the offense and enhancement factor (10), the defendant had no hesitation about committing a crime when the risk to human life was high. *Id*. In our view, for the reasons discussed in this opinion, the enhancement factors found at Tennessee Code Annotated section 40-35-114 (3), (6), (8), (9), and (10) are inapplicable in this case.

## 1. Tennessee Code Annotated § 40-35-114 (3); Offense Involved More Than One Victim

The trial court applied enhancement factor (3), the offense involved more than one victim, to the Defendant's conviction. The Defendant, citing *State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002), contends that application of this factor was inappropriate because there cannot be multiple victims for any one charge referring to a particular named person. This Court has defined "victim," as used in Tennessee Code Annotated Section 40-35-114(3), as being limited in scope to a person or entity that is injured, killed, had

11

property stolen, or had property destroyed by the perpetrator of the crime. *State v. Raines*, 882 S.W.2d 376, 384 (Tenn. Crim. App. 1994). This Court has also held that factor (3) may not be applied to enhance a sentence when a defendant is separately convicted of the offenses committed against each victim. *State v. Freeman*, 943 S.W.2d 25, 31 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995) (citations omitted). Additionally, our Supreme Court has held that there cannot be multiple victims for any one offense where the indictment specifies a named victim. *Imfeld*, 70 S.W.3d at 698. Because the Defendant was convicted of the indicted offense of vehicular homicide involving a specifically named victim, Ralph Calendine, the trial court improperly applied enhancement factor (3) during sentencing to his conviction.

## 2. Tennessee Code Annotated § 40-35- 114(6); Injuries are Particularly Great

The trial court found that the personal injuries sustained by the victims were particularly great. T.C.A. § 40-35-114(6). Again, the State concedes that the trial court should not have applied this factor to enhance the Defendant's sentence. This Court has consistently held that this factor should not be used to enhance a sentence for the offense of vehicular homicide because the death of the victim is an element of the offense. *State v. Norris*, 874 S.W.2d 590, 601 (Tenn. Crim. App. 1993). The trial court applied this factor based upon Mrs. Lynda Calendine's injuries, not the victim's injuries. The victim of the vehicular homicide conviction, however, was Mr. Ralph Calendine. Therefore, the trial court improperly applied enhancement factor (6).

## 3. Tennessee Code Annotated § 40-35- 114(8); Failed to Comply with the Conditions of a Sentence

Although the trial court did not address this factor in its sentencing order, in sentencing the Defendant following the proof at the hearing, the trial court stated:

> Factor number 8, I think applies: That the defendant before trial or sentencing has failed to comply with the condition of a release into the community. Although specifically the bond conditions - - there was no bond condition that he not refuse to submit to a blood test, that's not specifically mentioned. But it does mention that he should comply with the laws of the State. And so on July 21st, 2014, as a result the Tennessee Department of Safety suspended his driver's license for one year.

Release on bond is not a sentence involving release into the community and, therefore, application of factor (8) is improper when a defendant violates a condition of bond prior to sentencing. *See State v. Clark Douglas Lively*, No. M2002-00666-CCA-R3-CD, 2002

12

WL 31757480, at *3 (Tenn. Crim. App., at Nashville), *perm. app. denied* (Tenn. Feb. 11, 2003); *State v. Mark Allen Haskett*, No. E2001-00600-CCA-R3-CD, 2002 WL 31431498, at *11 (Tenn. Crim. App., at Knoxville, Oct. 31, 2002), *perm. app. denied* (Tenn. Jan. 7, 2003). Accordingly, this enhancement factor is not applicable in this case.

### 4. Tennessee Code Annotated § 40-35- 114(9); Possession of a Firearm During Commission of the Offense

At the sentencing hearing, the trial court correctly found that the possession of a firearm during the commission of the offense was inapplicable to the facts of this case. It stated, "Although [the Defendant] did have a firearm in the vehicle, I think that that enhancement goes to whether or not it was used on the offense." In the subsequent written order, however, the trial court found, "(9) the defendant possessed or employed a firearm . . . during the commission of the offense. [The Defendant] had a .380 in his vehicle during the commission of this offense." The State asserts that the inclusion in the order of factor (9) was "an oversight." In our view, the specific application of this factor by the trial court in the order, along with the trial court's reasoning for applying the factor, amounts to more than an "oversight." Because the trial court specifically addresses this factor and the basis for its application in denying the Defendant's request for a sentence involving split-confinement, we address factor (9).

This Court has held that factor (9) requires facts that "show some reasonable connection between the defendant's conduct or state of mind and the firearm[.]"*State v. Randall Cunningham*, No. W2013-01966-CCA-R3-CD, 2014 WL 2547726, at *5 (Tenn. Crim. App., at Jackson, May 30, 2014), *no Tenn. R. App. P 11 application filed*. No evidence was presented at the hearing about where the gun was located or kept within the Defendant's vehicle at the time of the crash nor is there any evidence that the firearm was used or there was an attempt to use the gun in the commission of this offense. Moreover, the nature of the offense, vehicular homicide by intoxication, reveals no reasonable connection between the Defendant's conduct or state of mind and the firearm. Thus, the trial court's application of this factor was error.

### 5. Tennessee Code Annotated § 40-35- 114(10); Risk to Human Life was High

The trial court made no mention of the application of enhancement factor (10), at the sentencing hearing when it ordered the Defendant to serve eight years in confinement. In the subsequent, sentencing order, however, the trial court found applicable "(10) The defendant had no hesitation about driving a vehicle when he was very intoxicated – an act which put many lives in danger."

The State asserts that this factor did not contribute to the trial court's decision to deny alternative sentencing since it was not addressed at the sentencing hearing. The trial court stated in its sentencing order that it was a basis for its findings, so we review its application of factor (10).

The Defendant contends that the trial court erred when it applied enhancement factor (10) to his sentence for vehicular homicide because the factor is inherent in the offense. *See State v. John D. Neblett*, No. 01C01-9805-CC-00231, 1999 WL 743633 (Tenn. Crim. App., at Nashville, Sept. 24, 1999), *perm app. denied* (Tenn. Feb. 14, 2000). However, this Court has held that, even when factor (10) is an element of the offense, it may still be applied where the defendant creates a high risk to the life of a person other than the victim. *State v. Bingham,* 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995).

Our review of the record shows that the Defendant, after consuming alcohol, was driving toward Highway 840 at around 5:30p.m. The Defendant made a left turn into the victim's southbound vehicle, causing the crash. The record is silent as to traffic patterns on the day of the crash and whether other motorists were present and therefore subject to injury at the time of the crash. In our view, no evidence was presented regarding the "many lives" that were put in danger. The life of Mrs. Lynda Calendine was in fact put in danger by the Defendant's conduct. Mrs. Calendine is a person other than the victim, Mr. Ralph Calendine. For this reason, we conclude that factor (10) is applicable here.

**B. Mitigating Factors**

The Defendant contends that the trial court erred in its application of mitigating circumstances. Specifically, (1) the Defendant argues that the trial court's oral findings at the sentencing hearing were inconsistent with regard to whether the crime occurred under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct, Tennessee Code Annotated section 40-35-113(11); and (2) the trial court erred in concluding the Defendant showed no remorse based upon his decision to give a statement in allocution.

**1. Tennessee Code Annotated § 40-35-113(11); Commission of Offense Where Unlikely that Substantial Intent to Violate the Law was Motivation**

Mitigating factor (11) is applicable when the "defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct." *See* T.C.A. § 40-35-113(11). At the sentencing hearing the trial court stated, "I don't see that that factor applies in this case because it is a factor that is already taken into account in the vehicular

14

homicide offense." Shortly thereafter, the trial court contradicted its finding that the offense did not occur under unusual circumstances by finding that the Defendant's conduct was "aberrant conduct."

Our review of the record shows that the Defendant had never been arrested before this incident. The record does not indicate "a sustained intent to violate the law motivated the criminal conduct of the Defendant." *Id*. There is overwhelming evidence in the record that the Defendant, prior to this crime, was a law-abiding citizen. In our view, this mitigating factor was applicable.

## 2. Allocution

Allocution has been defined "as the formality of the court's inquiry of a convicted defendant as to whether he has any legal cause to show why judgment should not be pronounced against him on the verdict of conviction." *State v. Stephenson*, 878 S.W.2d 530, 551 (Tenn. 1994) (citing Black's Law Dictionary 76 (6th ed.1990)) (footnote omitted). There is no constitutional right to allocution. *See State v. Stephenson*, 878 S.W.2d 530, 551-52 (Tenn. 1994), *abrogated on other grounds by State v. Saylor*, 117 S.W.3d 239 (Tenn. 2003) (citing *Hill v. United States*, 368 U.S. 424 (1962)); *State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976)). Rather, the right derives from Tennessee Code Annotated Section 40-35-210(b)(6) which mandates that, in a non-capital case, a defendant be allowed allocution before a sentencing judge or jury. A defendant is not required to provide a statement in allocution, and the sentencing judge is only required to consider "[a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing." T.C.A. § 40-35-210(b)(7).

In considering remorse as a mitigating factor, the trial court stated:

I don't think that remorse actually is a mitigating factor here, today w[ith] all due respect to [the Defendant]. The Court watched the hearing and watched the Defendant's reactions during the whole time. And of course you can never get into somebody's head or their heart, but I did not detect remorse from [the Defendant]. But I think also, the State has a good point in that [the Defendant] chose to allocate [sic] rather than take the witness stand and be subject to cross examination. I think if he had been willing to be subject to cross examination - - and of course, he's waived his Fifth Amendment rights by pleading guilty. So, if he had been willing to be subject to cross examination, he - - that would have shown more remorse to the Court. So, I don't think that factor applies.

Based upon our review of the law and the history of allocution, we do not think the Defendant's decision to make a statement in allocution rather than testify is a proper consideration in determining remorse. The Defendant has a statutory right to allocution. This right assists the trial court in considering individual aspects of a case for proper sentencing and "preserves the appearance of fairness" in the judicial system. *United States v. Ward*, 732 F.3d 175, 180-81 (3d Cir. 2013). For this Court to recognize a finding of lack of remorse based solely upon the Defendant's decision to allocute would undermine the purpose of the allocution. A trial court should not speculate that a sworn statement might be more remorseful than an allocution. It is the role of the trial court to assess the credibility and demeanor of the defendant during the allocution and then make a determination as to remorse.

In this case, it appears that the trial court determined that the Defendant was not remorseful because he expressed his remorse in an allocution rather than expressing his remorse in testimony, subject to his being cross-examined. In our view, the trial court should, on remand, determine whether or not the Defendant was remorseful based upon the allocution, giving the Defendant's allocution the weight that the trial court deems appropriate, without considering whether sworn testimony would be "more remorseful" than the allocution.

## C. Potential for Rehabilitation

The trial court did not address the Defendant's potential for rehabilitation at the sentencing hearing during its oral ruling. In the subsequent sentencing order, the trial court stated:

> The Court has considered [the Defendant]'s potential for rehabilitation or treatment and finds none. There was no evidence at the Sentencing Hearing that [the Defendant] is in need of treatment or rehabilitation. Indeed, he claimed during his allocution and in his written statement submitted to the Court that he no longer drinks alcohol. Additionally, there was no proof at trial that [the Defendant] is in need of any other type of treatment or rehabilitation.

Tennessee Code Annotated section 40-35-103 provides sentencing considerations. One of the considerations enumerated states: "The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. The length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence." This statute contemplates specific treatment and

16

rehabilitation programs; however, it also encompasses a broader consideration of "rehabilitation."

This Court has previously found that the failure to accept responsibility for one's actions is a proper consideration for determining potential for rehabilitation. *See State v. Dowdy*, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994). Moreover, this Court has previously held that, upon viewing a defendant's demeanor while testifying, the trial court is in a better position to accurately assess potential for rehabilitation. *See State v. Shawn E. Dodd*, No. 03C01-9508-CC-00214, 1996 WL 393926, at *1 (Tenn. Crim. App., at Knoxville July 16, 1996). This Court has previously stated that, "[a] lack of truthfulness is an indication of a defendant's potential for rehabilitation." *State v. Allen R. Jordan*, No. 01C01-9807-CC-00315, 1999 Tenn. Crim. App. 436837 at *3, (Tenn. Crim. App., at Nashville, June 30, 1999), *no Tenn. R. App. P. 11 application filed*. A defendant's repeated criminal behavior, history of drug abuse, and lack of a work history may indicate a lack of potential for rehabilitation. *See State v. Felicia Ann Lowery*, No. W2006-01808-CCA-R3-CD, 2007 WL 1989026 (Tenn. Crim. App., at Jackson, July 9, 2007), *perm. app. denied* (Tenn. Nov. 19, 2007). Repeated violations of sentences involving probation and Community Corrections indicates a poor potential for rehabilitation. *See State v. Tammy Yvonne Knight*, No. M1999-02540-CCA-R3-CD, 2001 WL 208506 (Tenn. Crim. App., at Nashville, March 1, 2001), *no Tenn. R. App. P. 11 application filed*. This list is certainly not exhaustive but shows the breadth of consideration when a trial court considers a defendant's potential for rehabilitation.

In the present case, the Defendant stated that the offense has served as a life-altering event in his life. He has since stopped drinking alcohol, lost weight, his health has improved, and he has sought spirituality. The Defendant's testimony indicates he has actively sought rehabilitation, and the Defendant's truthfulness was not questioned. He has a strong work history and has not shown a pattern of repeated criminal behavior or repeatedly violated sentences involving release into the community. In our view, the Defendant has a high potential for not re-offending and remaining a productive member of society. In considering whether to impose a sentence of "split confinement," which by definition would include a period of probation, the Defendant's potential for rehabilitation is an important factor for the trial court to consider, and is a broader issue than treatment for a drug or alcohol problem. On remand, we respectfully direct the trial court to consider "rehabilitation" and the Defendant's "potential for rehabilitation" in a broad sense rather than focusing solely on the Defendant's issues with alcohol.

### D. Denial of Alternative Sentence

Tennessee Code Annotated section 40-35-103 provides, in part:

17

(1) Sentences involving confinement should be based on the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant;

The sentencing consideration we focus upon is subsection (B) - "Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses." Here, the trial court found, and we agree, that the offense is "extremely serious." The trial court concluded that confinement was necessary under each of the two prongs set out in subsection (B).

Applying the relevant statutes, we find that the Defendant is not presumptively a favorable candidate for alternative sentencing because of the class of the offense committed. Even so, probation shall automatically be considered because the length of the Defendant's sentence is eight years. The trial court considered probation, found that it was not appropriate in this case, and stated its reasons on the record: to avoid depreciating the seriousness of the offense and deterrence. *See* T.C.A. § 40-35-103. Thus, the issue is whether the sentencing court's reasons for denying alternative sentencing comport with the Criminal Sentencing Reform Act of 1989.

If the seriousness of the offense forms the basis for the denial of alternative sentencing, Tennessee courts have held that "'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Grissom*, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997) (citing *State v. Bingham*, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995) and *State v. Hartley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)); *State v. Millsaps*, 920 S.W.2d 267 (Tenn. Crim. App. 1995) (citations omitted). We are unable to conclude that, although serious, the circumstances of this offense meet this standard.

As to the deterrent effect, this Court has stated that "[b]efore a trial court can deny alternative sentencing on the ground of deterrence, there must be some evidence contained in the record that the sentence imposed will have a deterrent effect within the jurisdiction." *State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995); *see also State v. Ashby*, 823 S.W.2d 166, 170 (finding evidence insufficient to support deterrence as sole reason for denying alternative sentencing). At the sentencing hearing, the State told the trial court that the Defendant's offense had been the only vehicular homicide in the previous year. The State failed to present evidence to support an argument for deterrence. Our Supreme Court has held that "deterrence cannot be conclusory only but must be supported by proof." *Ashby*, 823 S.W.2d at 170. As no proof was presented here, this consideration cannot be the basis for a denial of alternative sentencing.

### III. Conclusion

The Defendant's sentence in this case is within the proper sentencing range; however, while we are mindful of the standard of review for sentencing, the numerous errors made by the trial court in ordering this sentence rebut the presumption of reasonableness afforded to a trial court's sentencing determinations. Given the circumstances of this case, we cannot be certain that the trial court would have sentenced the Defendant to serve his eight-year sentence, if it had not improperly applied enhancement factors, failed to apply appropriate mitigating factors, and properly considered alternative sentencing factors. As such, because the trial court is in the best position to determine an appropriate sentence for the Defendant, we remand this case for re-sentencing. *See Bise*, 380 S.W.3d at 706 n. 41 (noting that "the trial court is in a superior position to impose an appropriate sentence and articulate the reasons for doing so").

_____
ROBERT W. WEDEMEYER, JUDGE