NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2001
_____

UNITED STATES OF AMERICA

v.

HYMAN GARCIA,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 5-09-cr-00281-001)
District Judge:  Honorable Cynthia M. Rufe
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 27, 2016

Before:  FISHER, VANASKIE and KRAUSE, *Circuit Judges*.

(Filed: November 8, 2016)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Hyman Garcia was sentenced to nine months' imprisonment for violating conditions of his supervised release. Alleging that his right of allocution was violated, Garcia appeals from that sentence. For the reasons that follow, we will affirm.

I.

In 2011, Hyman Garcia was sentenced to 57 months' imprisonment followed by three years' supervised release after he pleaded guilty to distributing crack cocaine and possessing a firearm after a felony conviction. After his release from prison, Garcia was arrested for violating six conditions of his supervised release.

The District Court held a supervised release revocation hearing. During that hearing, Garcia admitted that he violated all six conditions of his supervision, including the condition that he notify his probation officer of any change in address.[1] The parties disputed, however, the extent and nature of his failure to notify probation of his change in address. Garcia maintained that, although he properly lived at the address he provided to probation—his Aunt's home in Allentown, Pennsylvania—he traveled back and forth between there and an unreported address in Bethlehem, Pennsylvania.[2] The government, by contrast, argued he was living at the unreported address in Bethlehem to hide from his probation officer.

---

[1] J.A. 31-34.
[2] J.A. 32, 43-44.

Based on Garcia's admissions, the District Court revoked his term of supervised release and signaled its intention to sentence Garcia to six months' custody.[3] However, because Garcia requested placement in a half-way house or home-confinement at the Bethlehem address, the District Court continued the hearing pending an investigation into whether either option was possible as an alternative to imprisonment.[4]

A probation officer visited the Bethlehem residence and concluded that it was not suitable for home confinement.[5] In addition, the probation officer spoke with Garcia's mother, who stated that Garcia had been living at the unreported address in Bethlehem, rather than the address he had reported to probation.[6]

The Court reconvened the supervised release revocation hearing. Because of the condition of the Bethlehem home, and because Garcia had lied to the Court about maintaining his primary residence in Allentown, the government recommended that Garcia serve his sentence in prison.[7] In response, Garcia maintained that he was not hiding from probation, but trying to avoid jeopardizing his Aunt's receipt of Section 8 housing. He added that the Bethlehem residence was suitable for house arrest because his ownership of the property had been established by deed and a landline was installed to

---

[3] J.A. 53-55.
[4] J.A. 58.
[5] J.A. 62-63.
[6] J.A. 71.
[7] J.A. 72-73.

facilitate electronic monitoring.[8] Despite those arguments, the District Court found that the Bethlehem address was not suitable for home confinement because (1) it was unapproved, (2) there was nothing to show whether it was fully paid for, and (3) utilities could be turned off at any time.[9] The Court added that it no longer thought that a prison sentence was unfair because Garcia had lied on numerous occasions.

At this point, the District Court invited Garcia to speak before it imposed its sentence. Garcia began an address to the Court in which he indicated that he did not understand why the Court was "so angry now compared to before" or why it was "talking about FDC and stuff" when "the last time [it] had said 6 months on house arrest."[10] The Court explained that "house arrest would not work because [Garcia did not] have a suitable address" and Garcia began to argue that the Bethlehem house was suitable.[11] He argued that "[it] has a landline now," asking the Court "why isn't [the house] suitable" when it "is paid for and stuff."[12] The Court responded, noting that it was unsuitable "[f]or the reasons that have been laid out already and because [Garcia was] not reliable."[13] At the end of this discussion, the Court asked Garcia "[d]o you have anything else you'd like to say," and Garcia said "I feel like I'm wasting my breath on you because you're just

---

[8] J.A. 74-76.
[9] J.A. 75-76.
[10] J.A. 79-80.
[11] J.A. 80-81.
[12] J.A. 81.
[13] J.A. 81.

going to find me guilty."[14] Subsequently, Garcia made one final comment that he was "just wasting [his] breath" and added nothing further.[15]

Ultimately, the Court entered an order sentencing Garcia to nine-months' imprisonment with no supervised release to follow. Garcia timely appealed.

## II.

The District Court had subject matter jurisdiction over this case under 18 U.S.C. § 3231 and 18 U.S.C. § 3583. This Court has appellate jurisdiction over this case under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

On appeal, the parties debate what standard of review applies. Garcia argues that his comment that he was "wasting [his] breath" raised an allocution objection in the District Court and our review is plenary. The government argues that Garcia's comments were insufficient to raise an objection that he was denied his right of allocution, making our review for plain error. In support of his claim that our standard of review is plenary, Garcia relies on an out of circuit decision, *United States v. Li*.[16] In that case, the Second Circuit relied on two rationales to conclude that a Defendant's informal comments were sufficient to preserve an allocution objection for appeal. The first was that, "[a]s it became clear that the district judge was limiting the scope of [the Defendant's]

---

[14] J.A. 81.
[15] J.A. 81.
[16] 115 F.3d 125 (2d Cir. 1997).

allocution, she continuously protested [his limitation]."[17] The second was that "the district judge's own reference to a potential review . . . of [his] limitation . . . reflect[ed] an express awareness of [the Defendant's allocution] objection."[18]

Because Garcia's comments did not protest that his right to address the District Court was being restricted, because it was not clear that the District Court was placing any restrictions on his right to allocute, and because the District Court invited Garcia to speak further without contemplating that it was restricting Garcia's right to allocute, we cannot find, as the Second Circuit found in *United States v. Li*, that Garcia's comments placed his allocution rights "squarely before" the District Court to preserve them for appeal.[19] Accordingly, our review of this case is limited to plain error under Federal Rule of Criminal Procedure 52(b).[20] Under plain error review, Garcia must show that the District Court committed a "clear or obvious" error that "affected the appellant's substantial rights" by raising "a reasonable probability that the error affected the outcome of the proceedings."[21] If he meets that test, he must then show that the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings" before we may exercise our discretion to remedy it.[22]

---

[17] *Id.* at 132.
[18] *Id.*
[19] *See id.*
[20] *United States v. Adams*, 252 F.3d 276, 284 (3d Cir. 2001).
[21] *United States v. Calabretta*, 831 F.3d 128, 132 (3d Cir. 2016).
[22] *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

III.

"'[T]he right of allocution is deeply rooted in our legal tradition' and dates back to at least the fifteenth century."[23] It was codified by Congress in 1944 through the promulgation of Federal Rule of Criminal Procedure Rule 32, and, at a supervised release revocation hearing, it affords a defendant "an opportunity to make a statement and present any information in mitigation" before a sentence is imposed.[24] As we have stated previously, "the critical purpose of Rule 32 is threefold: (1) to allow the defendant to present mitigating circumstances, (2) to permit the defendant to present personal characteristics . . . , and (3) to preserve the appearance of fairness in the criminal justice system."[25] On appeal, Garcia argues that the District Court plainly erred by depriving him of his right to an allocution. Based upon that alleged error, he asks us to vacate the District Court's sentence and remand for resentencing.

We disagree. The District Court did not err, let alone commit an obvious error, because it did not violate Garcia's right of allocution by interrupting him as he was giving his statement. First, this case does not implicate the purpose of the right of allocution because Garcia's statement did not seek to present mitigating personal circumstances and sought solely to recontest factual issues (i.e., whether he had lied in

---

[23] *United States v. Ward*, 732 F.3d 175, 180-81 (3d Cir. 2013) (quoting *Adams*, 252 F.3d at 282).
[24] Fed. R. Crim. P. 32.1(b)(2)(E); *see also Ward*, 732 F.3d at 181.
[25] *Ward*, 732 F.3d at 181.

the initial hearing, and whether the Bethlehem address was suitable for house arrest).[26]

As we have stressed, "[t]he reason for allocution is not to permit the defendant to re-contest the factual issues of innocence and guilt."[27]

Second, even if we were to find that the District Court restricted Garcia's right to allocution, "[t]he sentencing judge has always retained the discretion to place certain restrictions on what may be presented during an allocution,"[28] and we cannot find that the District Court committed an obvious error by restricting the Defendant's ability to re-litigate factual issues when our prior decisions establish that such topics fall outside the proper purposes of an allocution. Indeed, we have repeatedly stressed that restrictions on the right to allocute are proper so long as the court, as is the case here, "personally addresses the defendant and offers him the opportunity to address the court before the sentence is pronounced."[29]

Finally, Garcia mischaracterizes the nature of the District Court proceedings. While the District Court did interrupt Garcia's statement on several occasions, many of the District Court's interruptions were responses to questions or invited by the nature of Garcia's statements—specifically Garcia's confusion as to why the District Court did not find the Bethlehem address suitable and might impose imprisonment.[30] In addition, the

---

[26] J.A. 79-81.
[27] *Ward*, 732 F.3d at 182.
[28] *Id.*
[29] *Id.*
[30] J.A. 79-81.

District Court invited Garcia to speak further if he had anything else to add. Ultimately, this dialogue between the District Court and Garcia is far removed from the circumstances deemed sufficient to violate the right of allocution in *Li*, where the district court "intimidated" the defendant from speaking freely by threatening to remove her from the courtroom and repeatedly stating that it was tired of listening to her.[31]

Because Garcia's right of allocution was not violated, the District Court committed no clear error, and relief is not warranted under Rule 52(b).

IV.

For the reasons set forth above, we will affirm.

---

[31] *See Li*, 115 F.3d at 130-33.