**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-4027**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHAD MARQUES JENNINGS,

Defendant - Appellant.

---

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., District Judge.  (1:22-cr-00262-WO-1)

---

Argued:  October 31, 2024                    Decided:  March 4, 2025

---

Before WILKINSON, KING, and THACKER, Circuit Judges.

---

Affirmed by published opinion.  Judge Thacker wrote the opinion in which Judge Wilkinson and Judge King joined.

---

**ARGUED:**  Eric David Placke, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant.  Julie Carol Niemeier, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  **ON BRIEF:** Louis C. Allen, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant.  Sandra J. Hairston, United States Attorney, Jacob D. Pryor, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

THACKER, Circuit Judge:

This case concerns the right of allocution and the ability of the district court to impose necessary limitations on that right. Chad Marques Jennings ("Appellant") claims the district court violated Federal Rule of Criminal Procedure 32(i)(4)(A)(ii) by preventing him from reading one of his three prepared statements and interjecting with questions during his allocution at his sentencing hearing.

Because the district court is permitted to engage with the defendant during allocution and, here, exercised its discretion to exclude irrelevant and repetitive information, we affirm.

I.

On September 12, 2021, police officers responded to a noise complaint at a house party in Sanford, North Carolina. While there, they heard gunshots and saw Appellant run to a blue van and speed away. The officers chased and caught up with Appellant and detained him for fleeing the officers. While detained, Appellant told officers he had a gun in his waistband. Officers later recovered bullet casings at the scene of the shooting, and those casings were a match for Appellant's gun. At the time Appellant knew that he had a prior felony conviction and was not allowed to possess a firearm.

Based on this incident, Appellant was charged and later pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). During the sentencing hearing, after hearing from Appellant's attorney, the court invited Appellant to address the court in allocution: "Mr. Jennings . . . you do have the right to address the Court

before any sentence is imposed, and if you wish to address the Court, now is the appropriate time." J.A. 74.[1] Appellant chose to address the court and spoke at length about how alcoholism had impacted his life and contributed to his criminality. In addition, Appellant read a poem he had written to the court. Then, he also read a prepared speech wherein he thanked his defense attorney and again explained how alcohol contributed to his criminal history.

During these statements, the district court interrupted Appellant twice with questions. During Appellant's first statement, he stated, "[w]ho I am as a person, I don't hurt or bother or disrespect random people." J.A. 74. The court interrupted and asked, "You shot somebody, Mr. Jennings. What does it mean you don't bother random people?" *Id.* Next, during Appellant's rendition of his original poem, the court interrupted with the question: "Wait a minute. Did you just say emotion, clothes, weather, money?" *Id.* at 75. Appellant also mentioned his sobriety journey and ended with a request for mercy. *See* J.A. 77–78 ("Your Honor, I just need a chance. Once again, I apologize. Please have mercy on me today. I can be a positive person in society.").

Thereafter, the district court began to question Appellant at length. The court detailed Appellant's criminal history and asked him if he accorded the same mercy to his victims that he was requesting from the court. At that point, Appellant asked to read a letter he had written to his mother. The court responded, "you can share the letter to your

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

mother later" and "you'll see your mother." J.A. 79. The court then continued to ask Appellant about his criminal history while going through each of the sentencing factors considered in 18 U.S.C. § 3553(a). The court was specifically focused on Appellant's lengthy criminal history.

Ultimately, the court sentenced Appellant to the statutory maximum of 120 months of imprisonment, finding that none of the mitigating factors offered by Appellant weighed against the seriousness of the offense and Appellant's criminal history. The court also stated that it would have imposed a higher sentence if not for the statutory maximum.

This timely appeal followed. Appellant argues that his 120 month sentence was procedurally unreasonable because the district court denied him the full exercise of his allocution right.

## II.

The parties dispute the applicable standard of review. Appellant argues, despite the fact that his attorney did not object, that he himself objected to the limitation of his allocution, which sufficiently preserved the objection and subjects it to abuse of discretion review. The Government argues that since the objection was not made by counsel, it is not preserved, and therefore the appropriate standard of review is plain error.

After Appellant read his prepared poem and statement, he sought to introduce a letter he had written to his mother. The court prevented this and instead sought to question Appellant about his previous crimes. Appellant continued to request permission to read the letter, saying: "you said I could;" "it's a letter to my mother;" and "I want to read it to her. I might not see her for a long time." J.A. 79. Appellant argues that these statements

4

constituted an objection to the court's ruling, and the resulting limitation of his allocution, which is sufficiently preserved for appeal.  Of note, Appellant's counsel did not object to the questioning by the judge or the exclusion of the letter to Appellant's mother.

In making his argument that he preserved the objection to the exclusion of the letter -- although his counsel did not -- Appellant relies on out of circuit precedent establishing that protestation by a defendant to the denial of speaking time during a sentencing hearing can preserve an allocution objection.  *See United States v. Li*, 115 F.3d 125, 132 (2nd Cir. 1997) ("While it is true that Lu's counsel voiced no such objection, we find that Lu's comments were themselves sufficient to preserve her Rule 32(c)(3)(C) rights for appeal."). *See also United States v. Chapman*, 915 F.3d 139, 143 (3rd Cir. 2019) (holding that a defendant can personally preserve an objection to a district court's allocution denial because it occurs during the defendant's speaking time);  *United States v. Abney*, 957 F.3d 241, 247 (D.C. Cir. 2020) (holding that the defendant "preserved his claim [of allocution denial] when he asked during sentencing for a chance to say something and the district court denied his request.).

Because we readily conclude that the district court did not err in limiting Appellant's allocution, the standard of review is immaterial to this appeal.  Appellant's claim would be unsuccessful if reviewed for either plain error or abuse of discretion.  Therefore, we need not wade into the question of whether an objection can be properly preserved when made by a defendant and not his counsel.  Therefore, we proceed directly to the merits.  *See United States v. Read*, 2022 WL 3098202 *1 n.2 (8th Cir. 2022) ("The government argues that plain error review should apply because [the defendant] did not object at sentencing

5

and thus failed to preserve his lack-of-allocution claim. Because we find that [the defendant's] appeal fails under either standard of review, we do not address this argument.").

### III.

### A.

A defendant has an absolute right of allocution during which he must be given the opportunity to speak or present mitigating information. *See* Fed. R. Crim. P. 32(i)(4)(A)(ii) ("Before imposing sentence, the [district] court must . . . address the defendant personally in order to permit [him] to speak or present any information to mitigate the sentence."); *see also Green v. United States*, 365 U.S. 301, 304 (1961). However, a defendant's right to allocution is not unlimited. *See Ashe v. North Carolina*, 586 F.2d 334, 335 (4th Cir. 1978). Significantly, the district court retains discretion to limit a defendant's allocution "both as to duration and content." *Id.* at 336. In determining what constitutes a permissible limitation, we have explained that a defendant "need be given no more than a reasonable time [to allocute]; he need not be heard on irrelevancies or repetitions." *Id.* at 337.

Allocution cases can be divided into two categories: complete denial of allocution and an allowed, but insufficient, allocution. Because of the importance of the allocution right, we have found plain error where a defendant was completely denied the right of allocution. *See United States v. Cole*, 27 F.3d 996 (4th Cir. 1994) (finding plain error as to the denial of allocution rights where the court did not let defendant speak at all); *see also Muhammed*, 478 F.3d at 247 (4th Cir. 2007) (similarly finding plain error where the court did not notify defendant of his right to speak); *Ashe*, 586 F.2d at 334 (finding a due process

6

denial on state habeas where defendants were directed by judge to remain silent). Here, Appellant concedes that this is not a case of total denial of his right to allocution. Instead, Appellant argues that the court's interruptions and limitation of the letter to his mother constitute an insufficient allocution. Neither of these arguments have merit.

B.

First, Appellant argues that the interruptions by the court during his prepared statement and the reading of his poem were improper and "thoroughly flummoxed" him, preventing him from continuing his allocution. Appellant's Opening Br. at 22. The relevant exchanges are:

> Appellant: Who I am as a person, I don't hurt or bother or disrespect random people. I'm not a random -- I don't do things like that.
>
> The Court: You shot somebody. . . .What does it mean you don't bother random people?

J.A. 74

> Appellant: The most common changes in life that we all identify with is [sic] emotions, clothes, weather, locations, and money.
>
> The Court: Wait a minute. Did you just say emotion, clothes, weather, and money?

J.A. 75.

A court is permitted to question an allocuting defendant so long as the interruption does not terminate the allocution. *See United States v. Covington*, 681 F.3d 908, 910 (7th Cir. 2012) ("[A]n interruption by the court does not in itself amount to a denial of a defendant's right of allocution. This is especially true . . . where the court's interruption

7

was an attempt to refocus the defendant's statements on mitigation rather than to terminate the allocution completely.").  Here, there is no indication that the questions by the district court were meant to terminate the allocution.  Instead, the court asked clarifying questions responsive to the Appellant's statements.  Further, the court allowed Appellant to continue speaking after these questions and did not cut him off.  Therefore, the questions were not an impermissible interruption of Appellant's allocution, and the district court did not err.

C.

Next, Appellant argues that it was improper for the court to have prevented him from reading the letter he wrote to his mother.  The relevant exchange in this regard is as follows:

> The Court: Did you have mercy on [the victim]?
>
> The Defendant: I just want to say one thing about that, Your Honor, and this is honest.
>
> The Court: Did you have mercy on [the victim]?
>
> The Defendant: It's the only thing I want to say.
>
> The Court: Um-hum.
>
> The Defendant: If its 10 -- so many bullets fired and the hospital never say what gun shot him, why am I being victimized for shooting it?
>
> The Court: So you didn't shoot that day? Who did you take a shot at? All right, let's go at it that way.
>
> [The Defendant][2]: It's the letter to my mother.

---

[2] There is an error in the court transcript on J.A. 079 ¶ 18.  According to the transcript, it is the court that says, "it's the letter to my mother," but that statement logically must have come from Appellant.

8

The Court: You can share the letter to your mother later.

The Defendant: Why?

The Court: Why?

The Defendant: You said I could -- It's a letter to my mother. I want to read it to her. I might not see my mother for a long time.

The Court: You'll see your mother.

J.A. 78–79.

A sentencing court is not required to countenance irrelevant or repetitive information. *See Ashe*, 586 F.2d at 337 ("[A defendant] need not be heard on irrelevancies or repetitions."). As Appellant himself made clear, the letter in question was not addressed to the court but instead was addressed to his mother. Appellant argues that the letter to his mother is relevant because it would somehow demonstrate his character, remorse, and prospects for rehabilitation. However, Appellant had already presented such information to the court, and there is no reason to require the district court to admit likely irrelevant, and certainly repetitive, information.

In the beginning of his allocution, Appellant thoroughly explained his struggles with alcohol and how he was under the influence while committing his prior crimes. Appellant then recited a poem he had written about the changes he was making in his life, such as attending Alcoholics Anonymous and Narcotics Anonymous, and pursuing his education. He then read a statement he wrote further explaining his record and his hope to become a productive member of society, as well as asking the court for another chance. The court listened to each of these statements and referenced Appellant's participation in recovery

9

programs as a positive factor. Therefore, we conclude that Appellant was provided with a sufficient and reasonable opportunity for allocution despite the district court's exclusion of the likely repetitive or irrelevant letter to his mother.

Appellant attempts to avoid this conclusion by arguing that the letter to his mother is relevant because nearly everything a defendant has to say during allocution has some relevance to sentencing. Appellant claims that any statement by a defendant provides insight into his character and that insight is necessarily relevant to a sentencing determination. However, such an expansive definition of relevance could require a court to listen to hours long allocutions on any topic a defendant wants to discuss. But, as we have explained, the district court is accorded discretion to discern relevance. In this case, the district court listened to the mitigating information Appellant offered and provided him with sufficient time to make a statement on his behalf. Allocution does not give a defendant the right to filibuster the sentencing court.

Because the district court did not impermissibly limit, terminate, or infringe on Appellant's right to allocution, there was no error, much less plain error.

IV.

The district court's sentence and judgment are

*AFFIRMED.*