**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 12-1511

———————

UNITED STATES OF AMERICA

v.

LAWRENCE SCOTT WARD,

Appellant

———————————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-08-cr-00148-001)
District Judge:  Honorable Petrese B. Tucker

———————————————

Argued on March 5, 2013

Before:  SCIRICA, JORDAN and ROTH, <u>Circuit Judges</u>

(Opinion filed: October 15, 2013)

Peter Goldberger, Esq. **(Argued)**
50 Rittenhouse Place
Ardmore, PA 19003

*Counsel for Appellant*

Sonja M. Ralston, Esq.
United States Department of Justice
Criminal Division
950 Pennsylvania Avenue, N. W.
Suite 1264
Washington, DC   20530

Bea L. Witzleben, Esq. **(Argued)**
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

*Counsel for Appellee*

O P I N I O N

**ROTH**, Circuit Judge:

Lawrence Scott Ward appeals the District Court's judgment of sentence. Ward alleges several sources of error in the proceedings below, including a violation of Federal

Rule of Criminal Procedure 32 on the theory that the District Court improperly required that he deliver his allocution under oath. For the reasons that follow, we will affirm the District Court's judgment of sentence.

## I.      Background

On August 27, 2006, Ward arrived at Dulles International Airport after a trip to Brazil. A search of Ward's possessions revealed that he was in possession of child pornography. Ward was arrested and indicted in the Eastern District of Virginia for that offense.

After Ward's arrest in Virginia, federal agents searched his office at the Wharton Graduate School of Business, in Philadelphia, Pennsylvania, where he served as an Emeritus Professor. The search revealed numerous photographs and videos of Ward engaged in sex acts with minors later identified as J.D. and R.D. The pictures and videos were taken in Brazil, where J.D. and R.D. lived. A search of Ward's email showed communications between Ward and J.D. and R.D. in which Ward requested that the boys engage in various sex acts, including having sex with other men chosen by Ward. The investigation also exposed evidence that Ward had paid for J.D.'s housing and provided J.D.'s family with money.

Between March and August 2006, Ward attempted to acquire a visa for J.D. to visit the United States. During the visa application process, Ward made several false statements to State Department personnel, including misrepresentations that J.D.'s family was affluent when in fact it was destitute.

Ward allegedly did this to show that there was little risk that J.D. would overstay his visa.

On May 17, 2007, after unsuccessfully attempting to consolidate the cases pending in the Eastern District of Pennsylvania and the Eastern District of Virginia, Ward pleaded guilty in the Eastern District of Virginia case and received a sentence of 15 years of imprisonment. On March 13, 2008, Ward was indicted in the Eastern District of Pennsylvania on two counts of shipping child pornography in interstate commerce, in violation of 18 U.S.C. § 2252(a)(1), and one count of false statements to a federal official, in violation of 18 U.S.C. § 1001. On August 21, 2008, the grand jury returned a superseding indictment charging Ward with an additional two counts of inducing a minor to engage in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a).

On November 17, 2008, Ward pleaded guilty in the Eastern District of Pennsylvania case to all five counts of the superseding indictment. At the sentencing hearing, the government requested and received a two-level sentencing enhancement because Ward's conduct involved two victims. The District Court sentenced Ward to 300 months of incarceration, lifetime supervised release, a $100,000 fine, and a $500 special assessment.[1] However, the District Court

---

[1] The District Court originally intended not to impose a fine but to award restitution of $100,000. When the prosecutor expressed concern about restitution because the victim, J.D., could not be found, the court responded, "so the $100,000 will be a fine, not restitution."

did not specify a particular sentence for each charge to which Ward pleaded guilty.

Ward appealed the sentence to this Court on three grounds: (1) challenging the two-level enhancement, (2) asserting that the District Court's rationale for imposing a fine was flawed, and (3) arguing that his sentence was an impermissible general sentence. We found no error in the District Court's conclusion that Ward's crime involved two victims. *United States v. Ward*, 626 F.3d 179, 183-84 (3d Cir. 2010). We also held that the District Court, in switching the $100,000 from restitution to a fine, stated insufficient reasons for imposing that fine, but, because Ward did not object to the fine at sentencing, we concluded that this error was not plain. *Id.* at 185-86. Finally, we held that the District Court erred by failing to impose a separate sentence for each count of the superseding indictment. *Id.* at 184. This error was reversible; thus, we remanded the case to the District Court for resentencing. *Id.* at 186.

While his appeal was pending, Ward maintained contact with J.D. and R.D., who at this point had fathered children. Ward attempted to establish a relationship with those children. Additionally, Ward violated prison rules by spending money on other inmates and attempting to use his attorneys to make contact with his victims for non-legal reasons.

At the resentencing hearing on February 9, 2012, the District Court personally addressed Ward, asking if he wished to speak on his own behalf. When Ward indicated that he wished to make a statement, the District Court, over defense counsel's objection, insisted that his allocution be delivered

5

under oath, pursuant to that judge's individual practice. Ward was placed under oath and proceeded to speak about his contrition for violating societal norms, his interest in rehabilitation, his personal struggle in coming to terms with the fact that he is a homosexual, his recent diagnosis of leukemia, and his hope that he would have a sentence short enough that he would not die in prison because he wanted to maintain his ties with family and friends.

After Ward allocuted, the District Court sentenced him to the same prison term of 300 months of incarceration, but increased the fine from $100,000 to $250,000. The District Court explained that the increased fine was not meant as punishment for Ward's successful appeal of his sentence; rather, the court stated that the $250,000 fine was within the advisory range and that the amount was a reasonable figure which Ward had the means to pay. The District Court also ordered that Ward have no contact with any person under 18 years of age, especially his victims' children in Brazil.

## II.    Discussion[2]

Ward challenges his sentence on seven independent grounds, arguing that his sentence should be vacated because (1) he had the right to deliver an unsworn allocution, (2) the District Court impermissibly increased his fine, (3) the government presented insufficient evidence to warrant a sentencing enhancement for Ward's involvement in a pattern of prohibited sexual conduct, (4) the District Court did not

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. This Court has appellate jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

adequately explain the reasons for choosing a 300 month sentence, (5) the District Court's refusal to grant Ward's request for a downward variance was procedurally unreasonable; (6) a 300 month sentence was substantively unreasonable, and (7) the District Court impermissibly failed to order restitution. All of Ward's arguments are unavailing.

### A. May the Court Require that Allocution be Sworn.[3]

Ward argues that Federal Rule of Criminal Procedure 32 affords all criminal defendants the right to deliver an unsworn allocution.[4] The issue of whether a criminal defendant has the right to an unsworn allocution is a matter of first impression in this Court and appears to be a novel question of federal law. As with any analysis of the Federal Rules of Criminal Procedure, our inquiry is guided by the text of the rule as well as its history and purpose. *See United States v. Higgs*, 504 F.3d 456, 459 (3d Cir. 2007). For the reasons that follow, we conclude that there is no right to

---

[3] Following oral argument, the Court directed the United States to file a supplemental brief, stating the formal position of the Department of Justice as to whether a criminal defendant may be required to be sworn at a sentencing hearing – either at the beginning or immediately before allocution. The Department of Justice filed such a brief. Ward was permitted to file a response and he did so. This post-argument briefing has been considered in our resolution of this appeal.

[4] Our review of a district court's compliance with Rule 32 is plenary. *United States v. Cherry*, 10 F.3d 1003, 1013 (3d Cir. 1993).

deliver an unsworn allocution. We leave it to the unfettered discretion of the district courts to decide whether the defendant will be placed under oath during allocution.

### 1. Legal Framework

"[T]he right of allocution is deeply rooted in our legal tradition" and dates back to at least the fifteenth century. *U.S. v. Adams*, 252 F.3d 276, 282 (3d Cir. 2001). The rules of evidence in early English and American common law deemed criminal defendants "incompetent as witnesses." *Ferguson v. Georgia*, 365 U.S. 570, 574 & n.3 (1961) (citing 3 Blackstone, Commentaries on the Laws of England, 369 (1769)). As a result, they could not testify on their own behalf at trial or plead legal defenses like insanity or justification. Kimberly A. Thomas, *Beyond Mitigation: Towards a Theory of Allocution*, 75 Fordham L. Rev. 2641, 2646-47 (2007). Thus, allocution, before sentencing, was the defendant's one chance to argue for mitigation. *Adams*, 252 F.3d at 282; Paul W. Barrett, *Allocution*, 9 Mo. L. Rev. 115, 120-21 (1944). Although the right of allocution predates the founding of the Republic, it is not a right guaranteed by the Constitution.[5] *Adams*, 252 F.3d at 282.

---

[5] There is some authority in other circuits suggesting that the right of allocution may be protected by the Fifth and Fourteenth Amendments. *See, e.g.*, *Boardman v. Estelle*, 957 F.2d 1523, 1525 (9th Cir. 1992) (habeas case, discussing right of allocution in state court); *United States v. Moree*, 928 F.2d 654, 656 (5th Cir. 1991) (discussing right of defendant to be present at sentencing); *Ashe v. North Carolina*, 586 F.2d 334, 336 (4th Cir. 1978) (habeas case, discussing right of allocution in state court). We do not adopt their reasoning.

However, acknowledging the historical and common law roots of the right of allocution, Congress codified the right in 1944 by promulgating Federal Rule of Criminal Procedure 32. *Id.* at 280 (citing *Green v. United States*, 365 U.S. 301, 304 (1961) (plurality opinion)). The text of Rule 32 sets forth only two requirements: the sentencing court must address the defendant personally and must permit the defendant to speak or present any information to mitigate the sentence. Fed. R. Crim. P. 32(i)(4)(a)(ii). The rule is silent as to whether the allocution should be sworn or unsworn. There is no legislative history discussing whether a defendant should be allowed to deliver an unsworn allocution, nor do the committee notes address the question.

The Supreme Court's 1961 decision in *Green* recognized the historical roots of the common law right of allocution, highlighting the equitable concern that a criminal defendant must always be asked if he has anything to say before sentence is imposed so that he has "the opportunity to present to the court his plea in mitigation." 365 U.S. at 304. The rationale supporting this procedural requirement is that even "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Id.* Rule 32 was codified with this policy in mind. *Id.*

The cases decided since *Green* confirm that the critical purpose of Rule 32 is threefold: (1) to allow the defendant to present mitigating circumstances, (2) to permit the defendant to present personal characteristics to enable the sentencing court to craft an individualized sentence, and (3) to preserve the appearance of fairness in the criminal justice system. *See*

9

Thomas, *Beyond Mitigation*, 75 Fordham L. Rev. at 2643. Thus, allocution "is designed to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances." *United States v. De Alba Pagan*, 33 F.3d 125, 129 (1ˢᵗ Cir. 1994). "Aside from [allocution's] practical role in sentencing, the right 'has value in terms of maximizing the perceived equity of the process,'" *United States v. Barnes*, 948 F.2d 325, 328 (7th Cir. 1991) (quoting 3 ABA Standards for Criminal Justice, 18-459 (2d ed. 1980)), because the defendant is given the "right to speak on any subject of his choosing prior to the imposition of sentence." *Barnes*, 948 F.2d at 328.

The contemporary practice of swearing or not swearing defendants before a Rule 32 allocution varies by district and by judge. Although no federal court has addressed the question of whether a Rule 32 allocution must be unsworn, our sister circuits have made passing references to both sworn and unsworn allocutions. *Compare, e.g.*, *United States v. Kaniss*, 150 F.3d 967, 969 (8th Cir. 1998) (noting that the defendant's Rule 32 allocution was sworn), *with United States v. Whitten*, 610 F.3d 168, 199 (2d Cir. 2010) (noting that a defendant may deliver "an unsworn, uncrossed allocution"); *see United States v. Gilbert*, 244 F.3d 888, 924 n.79 (11th Cir. 2001) (noting that Black's Law Dictionary defines allocution as an "unsworn statement" that "is not subject to cross examination"). However, under Rule 32, no court has ever held that a criminal defendant has an affirmative right to deliver an unsworn allocution.

Moreover, the Sentencing Guidelines do not distinguish between sworn and unsworn statements, permitting a sentence enhancement for any false statement,

10

whether sworn or not, made during an allocution. *See* U.S.S.G. § 3C1.1; *United States v. Parker*, 594 F.3d 1243, 1249-50 (10th Cir. 2010) (applying § 3C1.1 enhancement for a false statement made during the defendant's allocution without distinguishing between sworn or unsworn statements).[6]

### 2. Analysis

We conclude from the above review that, although allocution may frequently be unsworn, neither the Constitution nor Rule 32 require that this be so. Whether an allocution is sworn or unsworn does not affect a defendant's right to make a statement to the sentencing court nor does it subvert the policy goals of Rule 32. The reason for allocution is not to permit the defendant to re-contest the factual issues of innocence and guilt. Rather, the purpose of allocution is to afford the defendant an opportunity to raise mitigating circumstances and to present his individualized situation to the sentencing court. *See Adams*, 252 F.3d at 280; *see also Shelton v. Carroll*, 464 F.3d 423, 442 (3d Cir. 2006) (finding that the defendant had no constitutional right to make factual statements about his involvement in the crime during allocution in a capital case).

Under existing jurisprudence, the defendant's right of allocution is not unlimited. The sentencing judge has always

---

[6] The Application Note to § 3C1.1 states, without distinguishing between sworn and unsworn statements, that "providing materially false information to a judge or magistrate judge" is sufficient to warrant an enhancement. U.S.S.G. § 3C1.1 app. note 4(F).

retained the discretion to place certain restrictions on what may be presented during an allocution. *See, e.g.*, *United States v. Mack*, 200 F.3d 653, 657-58 (9th Cir. 2000) (affirming district court's refusal to allow the defendants to discuss their beliefs about environmental issues and civil disobedience); *United States v. Li*, 115 F.3d 125, 133 (2d Cir. 1997) ("[A] defendant's right to allocution is not unlimited in terms of either time or content."). These decisions confirm that a sentencing judge may impose procedural limitations during an allocution, so long as the judge personally addresses the defendant and offers him the opportunity to address the court before the sentence is pronounced. *See United States v. Hall*, 152 F.3d 381, 392 (5th Cir. 1998) (interpreting Rule 32 narrowly as imposing only its two stated requirements), *abrogated on other grounds by United States v. Martinez-Salazar*, 528 U.S. 304 (2000); *see also United States v. Pelaez*, 930 F.2d 520, 523 (6th Cir. 1991) (confirming that Rule 32 has only two procedural requirements, but also holding that the sentencing judge must meaningfully consider the defendant's statement during allocution).

Moreover, when a defendant presents such a statement, the fact that the court puts the defendant under oath could have the effect of enhancing the credibility of the defendant's presentation and leaving a more meaningful impression on the sentencing court. *See Estes v. Texas*, 381 U.S. 532, 558 (1965); Celine Chan, Note, *The Right to Allocution: A Defendant's Word on its Face or Under Oath?*, 75 Brook. L. Rev. 579, 582 (2009). That being said, the Supreme Court has also noted that, regardless of whether the statement is sworn, all "[s]olemn declarations in open court carry a strong

presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

We conclude, therefore, that the choice by a particular judge to require that the defendant be sworn for the allocution is not inconsistent with the procedural requirements of Rule 32.

Ward, however, argues that the District Court's requirement of a sworn allocution overstepped the bounds of Rule 32 – that

> by placing Mr. Ward under oath as if he were appearing as a witness, the district court violated one of the essential attributes of the defendant's historic and fundamental right to present a personal allocution prior to being sentenced. This right includes an opportunity for the defendant personally to express remorse to the court, to explicate factors in mitigation, and to plead for mercy prior to the imposition of sentence, an opportunity that is by its nature and by hundreds of years of historical tradition both unsworn and without cross-examination.

This concern is without merit. As discussed above, the purpose of Rule 32 is to give the defendant an opportunity to speak about mitigating circumstances and offer his reasoning for a more lenient sentence. Ward was free to address the sentencing court on any and all of these topics. These are not topics that address the factual elements of guilt, which have already been decided by the jury.

We would also point out that, rather than exercising his right to allocution, Ward could have remained silent. A risk in speaking at allocution, whether sworn or unsworn, is that the allocution statement can be used in subsequent criminal prosecutions. *See Harvey v. Shillinger*, 76 F.3d 1528, 1535 (10th Cir. 1996) ("A defendant's choice to exercise his right to allocution, like the choice to exercise the right to testify, is entirely his own; he may speak to the court, but he is not required to do so."). If the defendant is concerned about future use of his statement against him, it makes no difference whether the statement was sworn or not. *See Whitten*, 610 F.3d at 199 (holding that that prosecutors may use "an unsworn, uncrossed allocution" by a criminal defendant in a subsequent proceeding against the same defendant).[7] Ward's argument that an unsworn allocution

---

[7] Ward also cites to a case from an intermediate Tennessee appellate court, *State v. Keathly*, 145 S.W.3d 123 (Tenn. Crim. App. 2003), which appears to be the only court to have addressed the right to an unsworn allocution. The court in *Keathly* found a violation of the right of allocution because the defendant should have been "permitted to make an unsworn statement to the court without having been subjected to rigorous cross-examination." *Id.* at 130.

*Keathly* is distinguishable for two reasons. First, the court interpreted Tennessee law (the text of which mirrors Rule 32) as granting the right to an unsworn allocution based on the definition of the term in Blalck's Law Distionary. *Id.* at 124. The court did not engage in an analysis of the history or purpose of the right of allocution. Instead, it just looked to the definition provided in Black's Law Dictionary and cited an Eleventh Circuit case that cited the dictionary for the same proposition. *Id.* at 125 (citing *Gilbert,* 244 F.3d at 924).

14

would have allowed him to deliver a more candid statement to the sentencing court is not persuasive.

In sum, we conclude that the District Court retained the discretion to require Ward to deliver a sworn allocution. We find no basis to hold that the District Court violated Rule 32 when it required Ward's allocution to be sworn. The District Court's decision to place Ward under oath did not impinge upon Ward's right to speak on his own behalf, nor did the administration of an oath affect Ward's ability to present a plea of mitigation. Consequently, we find that there was no violation of Ward's right of allocution.

Second, and more importantly, the court held that the cross-examination during the defendant's allocution was improper under Tennessee law because it transformed the function of the allocution far beyond an opportunity for the defendant to express contrition and request leniency. *Id.* at 129-30. Indeed, the fact that the allocution was subject to cross-examination appears to be the dispositive issue in *Keathly*. Here, however, Ward was not subject to cross-examination. For these reasons, we do not find *Keathly* to be persuasive.

15

### B. The Remaining Grounds for Appeal[8]

#### 1. The Increase of Ward's Fine From $100,000 to $250,000

Ward claims that the District Court vindictively increased his fine at resentencing from $100,000 to $250,000, in violation of the Fifth Amendment. The Due Process clause forbids judges from retaliating against a defendant for succeeding on an appeal by imposing a more severe sentence on remand. *See North Carolina v. Pearce*, 395 U.S. 711, 726 (1969). In such cases, the defendant is typically entitled to a presumption of vindictiveness, although the government may rebut the presumption by "proffering legitimate, objective reasons for its conduct." *Esposito*, 968 F.2d at 303 (citations omitted). Additionally, the Supreme Court has limited application of the presumption to circumstances in which there is a "reasonable likelihood" that the increased sentence is the product of actual vindictiveness. *Alabama v. Smith*, 490 U.S. 794, 799 (1989). Where there is no reasonable likelihood of vindictiveness, the burden remains upon the defendant to prove actual vindictiveness. *Id.* at 799-800.

Here, the District Court acknowledged that the new fine was being imposed to correct an error identified by us in his earlier appeal, *i.e.*, the failure to state sufficient reasons for imposing the fine. The District Court then examined the

---

[8] In challenges to the sentence, we review a district court's factual findings for clear error and exercise plenary review over its applications of legal precepts. *United States v. Esposito*, 968 F.2d 300, 302-03 (3d Cir. 1992).

relevant factors: the Guidelines range, Ward's ability to pay, and Ward's crimes. At the second sentencing, with this information at hand, the District Court arrived at the figure of $250,000 as an appropriate fine. Additionally, the District Court explicitly stated that the increased sentence was not vindictive. (While certainly not determinative, a district court's statement of its aim and intention in pronouncing sentence is a factor to be considered in making a determination about vindictiveness.) Ward offers no evidence of vindictiveness other than stating that he is entitled to a presumption of vindictiveness based on the increased fine.

Assuming, however, that the presumption of vindictiveness applies, the particular facts of this case overcome the presumption. First, as the government points out, the District Court never actually considered the appropriate factors when assessing a fine during the first sentencing, but it did so at the second sentencing. Second, and contrary to Ward's assertion, there is evidence in the record that his sentence was partially based on the government's new information presented at his second sentencing. Specifically, after Ward objected to the imposition of the $250,000 fine, the government responded by saying: "Let me say that from what I understand, the Court is intending to increase the amount of the fine based on the new information and not based on the fact that the defendant took an appeal." The District Court responded

> Absolutely. It is not based upon that. My understanding of the opinion from the 3rd Circuit was that there was no basis in the previous sentencing for the imposition of the

17

$100,000. And based upon the presentence report and the defendant's financial background, the $250,000, which is under the guidelines, is a reasonable figure and he is in a position to afford that. And so that's the basis of that.

The court's statement confirms that the court analyzed the factors for imposing a fine. That objective evidence, combined with the court's statement is adequate on this record to overcome any presumption of vindictiveness. Given the lack of evidence or argument that there was actual vindictiveness, the District Court did not err in determining to increase Ward's fine.

Therefore, we reject Ward's argument that the increased fine was vindictive.

### 2. The Five Level Enhancement for Ward's Engagement in a Pattern of Prohibited Sexual-Conduct

Ward claims that there was insufficient evidence to support the District Court's application of a five level enhancement under U.S.S.G. § 4B1.5(b)(1) for engaging in a pattern of prohibited sexual conduct.

Section 4B1.5(b)(1) provides that, "[i]n any case in which the conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct[,] [t]he offense level shall be [increased by] 5[.]" U.S.S.G. § 4B1.5(b)(1). The commentary to subsection (b) provides that a "defendant [has] engaged in a pattern of

18

activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." U.S.S.G. § 4B1.5(b)(1) app. note. 4(a). Prohibited sexual conduct with a minor includes the production of child pornography . *Id.*

At Ward's resentencing, the District Court made note of the entire record that had been submitted at his first sentencing and incorporated all findings made therein. The District Court also received new evidence showing that Ward produced photos and videos of J.D. engaged in sex acts. When the District Court announced Ward's new sentence, it stated that it was considering "not only the information that was given here today, but the information that was given previously about Mr. Ward's contact with young people, young men, previously." Given the extensive evidence of a pattern of prohibited sexual conduct, the District Court did not err in imposing the five level enhancement under § 4B1.5(b)(1).

### 3.   The Imposition of a Within-Guidelines Range Sentence

Ward contends that his sentence should be vacated because the District Court failed to comply with 18 U.S.C. § 3553(c)(1).

Section 3553(c)(1) provides that, when the Guidelines range of the sentence spans more than 24 months, the sentencing court must explain "the reason for imposing a sentence at a particular point within the range". 18 U.S.C. § 3553(c)(1). A sentencing court will satisfy the requirements of § 3553(c)(1) when it gives "concrete reasons for its choice

19

of sentences." *United States v. Gricco*, 277 F.3d 339, 363 (3d Cir. 2002).

Here, the Guidelines range for Ward's sentence ran from 292 to 365 months—a span of 73 months. The District Court imposed a 300-month sentence. Before imposing the sentence, the District Court listed a variety of reasons why the sentence was necessary, including the seriousness of the crimes, Ward's lack of respect for the law, his high risk of reoffending, and the need for general and specific deterrence. This was clearly a sufficiently detailed explanation of the reasons for Ward's sentence. *See Lloyd*, 469 F.3d at 326 (holding that the sentencing court provided an adequate explanation for the defendant's sentence when it discussed the defendant's criminal history, the sentences received by his co-defendants, and the danger of his crime to society).

Ward takes issue with the District Court's failure to state why a 300 month sentence was more appropriate than any other sentence within the 292 to 365 month range. This argument misconstrues the law. The District Court did not have an obligation to state why a 300 month sentence was more appropriate than all other possible sentences. Rather, the District Court needed only to state why the 300 month sentence was sufficient. *See Gricco*, 277 F.3d at 363. Therefore, we reject Ward's argument that the District Court failed to comply with 18 U.S.C. § 3553(c)(1).

### 4. Ward's Request for a Downward Variance

Ward claims that he was entitled to a downward variance based on his age, physical and psychological

condition, and the atypically harsh conditions of confinement to which he was subject. Ward argues that the District Court's alleged failure to consider and appreciate the relevance of these factors rendered his sentence procedurally unreasonable.

We may not overturn a sentence on procedural unreasonableness grounds when the sentencing judge has "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). Here, the District Court did not disregard Ward's arguments at sentencing. The District Court specifically addressed and rejected each claim. The District Court's consideration of Ward's arguments for a variance adhered to the Supreme Court's guidance in *Rita*. Therefore, we will not disturb the sentence on procedural reasonableness grounds.

### 5. Ward's Sentence Is Not Substantively Unreasonable

Ward argues that 300 months of incarceration is substantively unreasonable because the sentence exceeds his projected life expectancy. We will affirm unless "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id*. at 568.

The fact that Ward may die in prison does not mean that his sentence is unreasonable. *See U.S. v. Watson*, 482 F.3d 269, 273 (3d Cir. 2007). Looking at the totality of the circumstances, we are not convinced that Ward's sentence—

21

which is within the advisory Guidelines range—is substantively unreasonable. The District Court found that Ward posed a grave danger to society and had committed serious crimes, thus necessitating a long sentence. The District Court was well within its discretion to impose a 300 month sentence. We therefore reject Ward's argument that his sentence is substantively unreasonable.

## 6. Restitution

Ward contends that the District Court failed to comply with 18 U.S.C. § 2259, which requires the sentencing court to order the defendant to pay restitution to his victims if their losses can be determined. 18 U.S.C. § 2259(a), (b)(3), & (b)(4)(A). Ward now requests that we vacate his sentence and remand for resentencing so that the District Court can order restitution. Ward did not object to the District Court's decision not to order restitution at his resentencing. As a result, we review the District Court's decision for plain error. *United States v. Couch*, 291 F.3d 251, 252-53 (3d Cir. 2002).

Ward lacks standing to raise this challenge because only the crime victim, the crime victim's legal representative, or the government may assert rights related to a restitution award. 18 U.S.C. § 3771(d)(1). Therefore, his argument is meritless.

Ward, however, asserts that he has standing because the imposition of a fine was directly related to the District Court's inability to impose restitution. This argument misconstrues the record on appeal. On Ward's first appeal, we noted that the District Court's decision to impose a fine instead of restitution was improper because "the Court simply

22

translated the intended restitution into a fine owed to the government, without engaging in any analysis as to why a fine was appropriate and despite it having appeared . . . that no fine would be imposed." *Ward*, 626 F.3d at 185-86 (citation omitted). At Ward's resentencing, as noted above, the District Court did not translate the intended restitution into a fine. Instead, the District Court considered the factors relevant to the imposition of a fine, consistent with 18 U.S.C. § 3572. Based on the record before us, the District Court's decision to impose a fine at resentencing was unrelated to its decision not to order restitution. We therefore will not consider Ward's argument that the relatedness of the fine and restitution gives him standing to challenge the failure to order restitution.

## III.  Conclusion

For the foregoing reasons, we will affirm the District Court's judgment of sentence.