NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3694
_____

CHRISTOPHER RAD,
                                        Appellant

v.

UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-15-cv-07740)
District Judge:  Honorable Anne E. Thompson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 17, 2021
Before:  GREENAWAY, Jr., KRAUSE, and BIBAS, Circuit Judges

(Opinion filed: February 19, 2021)
_____

OPINION[*]
_____

PER CURIAM

        Christopher Rad appeals from the District Court's order denying his motion under

28 U.S.C. § 2255.  We will affirm.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not

In 2011, Rad was indicted on federal charges relating to his role in the use of spam emails as part of a "pump and dump" stock price manipulation scheme. Rad was the middleman between the masterminds of the scheme and the personnel who executed it through email spamming. The superseding indictment charged Rad with nine counts. Count One charged him with conspiracy to commit: (1) securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff; (2) "false header spamming" in violation of 18 U.S.C. § 1037(a)(3); and (3) "false registration spamming" in violation of 18 U.S.C. § 1037(a)(4). Counts Two through Four were substantive charges of false registration spamming. Count Five was a charge of conspiring to commit "unauthorized access spamming" in violation of 18 U.S.C. § 1037(a)(1), and Counts Six through Nine were substantive charges of unauthorized access spamming.

The evidence against Rad at trial included the testimony of James Bragg, who testified in support of the spamming aspect of Count One and the substantive false-registration counts at Counts Two through Four. Bragg testified generally that Rad hired him to send the spam emails at issue, that Bragg did so by sending mass emails with false header information and from falsely registered accounts, and that Rad knew as much. Bragg's testimony was corroborated in part by numerous transcripts of Skype chats

_____

constitute binding precedent.

between Rad and Bragg, in which they discussed the email campaigns, as well as test emails that Bragg sent to Rad containing false header information.

On the basis of this and other evidence, a jury found Rad guilty of Counts One as to spamming and of Counts Five through Nine. The jury found Rad not guilty of Counts Two through Four. The District Court sentenced Rad to 71 months in prison. We affirmed. See United States v. Rad, 559 F. App'x 148 (3d Cir. 2014).

Rad later challenged his convictions by filing a § 2255 motion. In that motion, Rad raised several claims regarding the witness Bragg as well as other claims that are not presently relevant. Bragg's spamming activities had subjected him to federal criminal charges of his own. At the time of Rad's trial, Bragg (1) had pleaded guilty and been sentenced in the Eastern District of Michigan, and (2) had pleaded guilty and was awaiting sentencing in the District of New Jersey. Rad argued that the Government, in violation of Brady v. Maryland, 373 U.S. 83 (1963), failed to disclose materials from Bragg's Michigan case that Rad could have used to further impeach his credibility. Rad also argued that those materials and others showed that Bragg lied about various points at trial and that the Government, in violation of Giglio v. United States, 405 U.S. 150 (1972), and Napue v. Illinois, 360 U.S. 264 (1959), failed to correct Bragg's testimony.

The District Court denied these claims on the merits but scheduled a hearing on one of Rad's other claims and later denied that claim as well. Rad then appealed, and we issued a certificate of appealability ("COA") limited to his Brady and Napue claims

regarding Bragg.[1]  With our COA grant, we have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).  Our review is plenary because the District Court did not hold a hearing on these claims.  See Cordaro v. United States, 933 F.3d 232, 241 (3d Cir. 2019).

## II.

Having carefully reviewed the record and the parties' briefs, we will affirm.  We focus on Rad's strongest claim, but our discussion of materiality below effectively resolves Rad's other claims as well.

Bragg testified at trial that he and Rad worked together on the scheme at issue here and that, toward that end, he sent numerous spam emails on Rad's behalf.  At Bragg's Michigan sentencing, however, Bragg stated[2] that he did not work with someone to

---

[1] Our order read in relevant part:

> Appellant's request for a COA is granted on his claims regarding James Bragg that: (1) the Government violated Brady . . . by failing to disclose evidence relating to Bragg's Michigan case; and (2) the Government violated Giglio . . . and Napue . . . by knowingly presenting or failing to correct Bragg's allegedly false or misleading testimony.  This COA includes the issue (to the extent that a COA might be required on it) whether the District Court erred in denying appellant's requests for Brady-related discovery regarding Bragg.  This COA does not, however, include any claim based on the testimony of FBI Agent Laurie Allen.  As to that claim and all of appellant's other claims, including appellant's claims of ineffective assistance of counsel, appellant's request for a COA is denied.

[2] We use the word "stated" rather than "testified" because the transcript of Bragg's Michigan sentencing does not reflect whether he was placed under oath.  See United States v. Ward, 732 F.3d 175, 182 (3d Cir. 2013) (noting that "[t]he contemporary practice of swearing or not swearing defendants before a Rule 32 allocution varies by district and by judge").  Our decision, however, does not turn on that point.

whom Bragg referred as "him" and did <u>not</u> send emails on that person's behalf. The relevant statements are in the margin.[3] Rad claims that Bragg's reference to "him" was to Rad. Rad further claims that he could have used these statements to impeach Bragg's testimony at trial but that the Government withheld them in violation of <u>Brady</u>. A <u>Brady</u> violation occurs when (1) a prosecutor suppresses evidence that is both (2) favorable to the accused and (3) material to the outcome of the trial. See <u>Dennis v. Sec'y, Pa. Dep't of Corr.</u>, 834 F.3d 263, 284-85 (3d Cir. 2016) (en banc).

The District Court rejected this claim on the ground that, given the number of conspirators in both the Michigan and the New Jersey cases, Bragg's reference to "him" was too vague to be understood as a reference to Rad. But even if we were to accept Rad's arguments that this reference was to Rad or at least could have been used by him to further impeach Bragg and that it was suppressed by the Government, Bragg's reference

---

[3] At his Michigan sentencing, Bragg stated:

> I talked to them up until 2008, but I didn't do work. I technically never sent spam e-mail for him but he did talk to me and I, in my chat logs I actually told him multiple times that I didn't want to work with him, his group, because the guy he was using was breaking the law; he was hacking and things like that. That's said multiple times in the logs. But he did send me money. He did send me $20,000 that I can recall, but $10,000 of it was taken back, $10,000 I did keep. But other than that, I really actually never, I never proceeded to send e-mail for him.

(Supp. App'x at 1558.)

to "him"[4] is not dispositive of this claim because it was not material. Evidence is material for Brady purposes if there is a reasonable probability that its disclosure would have produced a different result. See id. at 285. Rad argues in conclusory fashion that the Government's "entire case" hinged on Bragg's testimony, but he has not addressed much of the other evidence against him and he ultimately has not made this showing.

Three interrelated considerations lead us to that conclusion. First, Bragg's credibility already was significantly impeached at trial by his criminal record and his admission that he hoped for leniency on his New Jersey sentence in exchange for his testimony against Rad. (Supp. App'x at 138-40.) That admission led the District Court to instruct the jury that Bragg's testimony "may have been influenced by [his] plea agreement" and that the jury "should consider his testimony with great care and caution." (Id. at 1092.) Moreover, Bragg admitted on cross-examination that he lied on other occasions (id. at 201, 284), and those admissions and other evidence led Rad's counsel to argue throughout his closing that Bragg had lied under oath and "lied constantly" (id. at 1206, 1211, 1218-19, 1223-24, 1228, 1233).[5]

---

[4] As the Government noted below, Bragg's reference to "him" likely was to Rad because (1) Bragg made the reference in connection with the New Jersey case involving Rad, and (2) Bragg claimed, and the evidence at Rad's trial showed, that it was Rad who discussed these issues with Bragg and paid him $20,000.

[5] To be clear, we do not reject this claim on the ground that impeachment of Bragg with his statements at his Michigan sentencing would have been merely cumulative. It would not have been. The same cannot be said for the evidence underlying Rad's other claims. Rad claims, for example, that the production of additional materials and correction of Bragg's allegedly false testimony at trial would have allowed him to impeach Bragg with

Second, the Government itself acknowledged Bragg's credibility problems at closing and argued that the jury should not accept his testimony at face value but should instead look to documentary evidence corroborating that testimony. (Id. at 1155.) The Government then highlighted that corroborating evidence throughout its closing. That evidence, as relevant to the Count One spamming conspiracy, included Skype chat logs and emails showing that Bragg sent Rad test emails with false header information (id. at 70, 118-19, 124-28, 135-36, 1376-1400), that Bragg informed Rad that his emails were bypassing spam filters (id. at 82-83, 1296), and that Rad continued to work with Bragg even after learning that he had been indicted for illegal spamming in Michigan (id. at 106-07, 1299-1300), which Rad initially denied having known at the time (id. at 50).

Finally, the jury found Rad not guilty of Counts Two through Four, which charged Rad with aiding and abetting Bragg's illegal spamming activities. Those charges were supported by Bragg's testimony but not by the same kind of corroborating evidence supporting the spamming conspiracy charged in Count One of which the jury found Rad guilty. Given all of these circumstances, there is no reasonable probability that the jury would have found Rad not guilty of Count One too if Rad had been able to further

a possible motive to cooperate in exchange for leniency in his Michigan case. But Bragg already admitted that he had an actual motive to testify against Rad because he hoped for leniency in his New Jersey case. The speculative possibility that Bragg may also have had such a motive by reason of his Michigan case—which did not involve Rad, and which had long concluded by the time of Rad's trial—would have added nothing to that line of impeachment.

7

impeach Bragg with Bragg's statements at his Michigan sentencing. Nor is there any merit to any of the other claims and issues on which we granted a COA.[6]

## III.

For these reasons, we will affirm the judgment of the District Court. Rad's motion for leave to file an overlength reply brief is granted. Rad's motion to take "judicial notice" is denied.[7]

---

[6] In his opening brief, Rad raises a number of claims that we did not certify for appeal. After the Government argued that we should not consider those claims, Rad clarified that he raised them merely to provide "context." In any event, we decline to address the merits of Rad's non-certified claims.

[7] By this motion, Rad seeks to assert a claim that he has been rendered innocent by Rad v. Attorney General, 983 F.3d 651 (3d Cir. 2020), in which we recently addressed the immigration consequences of his convictions. We could construe Rad's motion as an application under 28 U.S.C. §§ 2244 and 2255 for leave to file a second or successive § 2255 motion because Rad appears to be seeking to raise another § 2255 claim and our disposition of this appeal concludes his initial § 2255 proceeding. See United States v. Folk, 954 F.3d 597, 609 (3d Cir. 2020). We decline to do so both because Rad knows how to file § 2244 applications (C.A. No. 17-2290) and because Rad's reliance on our opinion in his immigration case does not qualify for authorization. See 28 U.S.C. §§ 2255(h). We further decline to address whether Rad has any other procedural mechanism for raising this claim because this claim lacks merit. In Rad, we held (as relevant here) that convictions under 18 U.S.C. §§ 1037(a)(3) and (4) categorically involve fraud or deceit for purposes of 8 U.S.C. § 1101(a)(43)(M)(i). Contrary to Rad's argument, we did not interpret these statutes in a way that makes Rad innocent of those offenses or that renders the evidence at trial insufficient to convict.