IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOHN MUHAMMAD, | § | |
| | § | |
| Defendant-Below | § | No. 361, 2022 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2007003170 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: August 9, 2023
Decided: October 31, 2023

Before **SEITZ**, Chief Justice; **TRAYNOR** and **LEGROW**, Justices.

## ORDER

This 31st day of October, 2023, after careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     John Muhammad was indicted by a New Castle County grand jury on five counts of unlawful sexual contact in the second degree for molesting the underage daughter of his ex-wife.  Muhammad testified in his own defense at trial, and a Superior Court jury found him guilty on all counts.  The trial judge deferred sentencing and ordered a presentence investigation.

(2)     At Muhammad's sentencing hearing, which took place four months after the jury verdict, the court noted that it had read the presentence-investigation

report and received "a whole book full of extenuating circumstances" from Muhammad.[1]

(3)     Pointing to aggravating circumstances, including prior arrests for offenses involving public lewdness, and Muhammad's violation of a no-contact order during the investigation in this case, and his failure to accept responsibility for his actions, the State recommended a sentence of three years Level V incarceration.  Muhammad's counsel argued in favor of a lesser sentence of home confinement.

(4)     After hearing from counsel, the court apprised Muhammad of his right of allocution, giving him the "opportunity to say anything" he would like.[2]  He took the opportunity to describe his role as an informant in several police investigations, his schooling and military service, his work history, his family life as a grandfather, and the support he gave to his mother and to his friend, a mentally disabled man. Muhammad spoke, apparently reading a written statement, for approximately nine transcript pages before the court interrupted him, remarking, "I want to assure you, I've read basically everything you just said.  You've written me a book. . . . I don't know what you just picked up, but I hope it's not to read more papers.  Why don't you just talk to me?"[3]

---

[1] App. to Opening Br. at A508.
[2] *Id.* at A521.
[3] *Id.* at A530.

(5)     The sentencing judge then asked Muhammad, "[w]hat sentence do you think you should get?"  He replied, "I'm not saying I'm guilty of anything except being good to a family in need . . . . That's all I did was be good to a family who needed my assistance who was going through drug and alcohol abuse, who I was always there, even though she had five brothers who were all into the same lifestyle. They would always call me, because I was dependable."[4]   Then, Muhammad described how the victim's father had a DUI and ended up in a nursing home, noting that he helped the family at that time.  The judge stopped him, stating, "Okay, I need to impose the sentence, and then I need to move on to the next two cases, okay?"[5] Muhammad said, "Okay, I have just one more thing[.]"[6]   The judge permitted Muhammad to make his "final point."[7]

(6)     Muhammad then launched into a critique of the victim's social media posts.   The information pertaining to the victim's social media, which was apparently part of his written submission to the judge, was not evidence presented at trial.   The court allowed Muhammad to speak on the issue briefly but then interrupted, explaining that it was already familiar with the point that Muhammad was trying to make, having "already read all the social media stuff"[8] that Muhammad

---

[4] *Id.* at A530–31.
[5] *Id*. at A531–32.
[6] *Id.* at A532.
[7] *Id.*
[8] *Id*. at A533.

3

had included in his written submission. The court then expressed its intent to announce its sentence, and Muhammad, seemingly content, responded politely, "Okay, yes, sir."[9]

(7)     After noting that Muhammad had submitted "a lot of good character recommendations,"[10] the court observed that "the facts of this case quite clearly demonstrate a pretty manipulative person who manipulated this young girl[.]"[11] The court bemoaned the extent to which Muhammad had traumatized his young victim—a consequence that Muhammad, in the court's eyes, did not appreciate— and signaled its intention to adopt the State's sentencing recommendation. Accordingly, it imposed an aggregate fifteen-year term of incarceration, suspended after three years followed by decreasing levels of supervision.

(8)     In this appeal, Muhammad contends that "[t]he sentencing judge violated [his] rights to allocution by repeatedly interrupting, and eventually prohibiting [him] from finishing his remarks even though they were substantively appropriate and reasonable in length."[12]

(9)     Neither Muhammad nor his counsel objected when the sentencing judge cut Muhammad's allocution short. And the parties agree that unpreserved

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] Opening Br. at 8.

4

challenges to restrictions on the right of allocution are reviewed for plain error. Both cite *Capano v. State*[13] as supporting this standard of review. But *Capano* involved the scope of allocution during the penalty phase of a capital murder trial, where the allocution was before a jury. We see the dynamics of allocution under that circumstance to be fundamentally different than allocution before a judge who has presided over the defendant's trial and who has had the benefit of a presentence investigation.

(10) The rigorous "plain error" standard,[14] which is triggered when a party fails to object to an error in the trial court, is not suitable to the circumstances here. The court had made it clear that it had heard and read enough from Muhammad, and an objection from Muhammad or his counsel would have been, it seems, superfluous and, given the context, imprudent. Accordingly and for the reasons given below, we review the sentencing judge's statements to Muhammad during his allocution not for plain error but under an abuse-of-discretion standard.

---

[13] *Capano v. State*, 781 A.2d 556, 659, 664 (Del. 2001).

[14] *See Watson v. State*, — A.3d –, —, 2023 WL 5030026, at *5 (Del. Aug. 8, 2023) ("For an error to be 'plain' under this standard, it 'must be so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial. Findings of plain error are limited to material defects that are 'apparent on the face of the record[,] . . . basic, serious and fundamental in their character. . . . " (quoting *Dutton v. State*, 452 A.2d 127, 146 (Del. 1982) and *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).

(11)   A defendant's right to allocution is not grounded in either the federal or our state constitution.  The right is grounded in Superior Court Criminal Rule 32[15] and Delaware decisional law.[16]

(12)   This Court has not defined the contours of the right of allocution in the non-capital sentencing context.  The federal courts, however, have recognized that under Federal Rule of Criminal Procedure 32, which, as to allocution, is substantially similar to Superior Court Criminal Rule 32, the right is not unlimited.[17] The right "may be limited both as to duration and as to content.  [A defendant] need be given no more than a reasonable time; he need not be heard on irrelevancies or repetitions."[18]  It is therefore within the discretion of the sentencing judge to place restrictions, when necessary, on the scope of allocution.[19]  These standards are appropriately applied here.

(13)   As required by Rule 32, the court addressed Muhammad and determined that he wished to address the court.  Having already considered Muhammad's apparently voluminous written submission and the presentence

---

[15] Rule 32(a)(1)(c) provides that "[b]efore imposing sentence, the court shall . . . [a]ddress the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence."

[16] *Shelton v. State*, 744 A.2d 465, 495 (Del. 2000).

[17] *See United States v. Ward*, 732 F.3d 175, 182 (3d Cir. 2013) ("Under existing jurisprudence, the defendant's right of allocution is not unlimited.  The sentencing judge has always retained the discretion to place certain restrictions on what may be presented during an allocution." (citing opinions from the Second, Fifth, Sixth, and Ninth Circuits)).

[18] *Ashe v. North Carolina*, 586 F.2d 334, 337 (th Cir. 1978).

[19] *Ward*, 732 F.3d at 182.

report, the court allowed Muhammad to speak at length. After Muhammad recounted tales of his cooperation with law enforcement in unrelated investigations, he provided the court with basic background information, including his date of birth, educational and military background, employment history, and family composition. When Muhammad's statement appeared to lose focus, the sentencing judge assured him that he had already read the "book" Muhammad had submitted in advance of the sentence hearing. Muhammad then redirected his remarks to social media information that the court had already reviewed in anticipation of the hearing. When the court once again tried to redirect Muhammad's attention to the issue at hand, asking him, "What sentence do you think you should get?" Muhammad was not responsive, digressing instead to more "irrelevancies [and] repetitions."[20] And when Muhammad said that he had "just one more thing"[21] to share with the judge, he was allowed to do so to his apparent satisfaction. We cannot find an abuse of discretion or an abridgment of Muhammad's right of allocution on these facts.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[20] *See supra* note 18.
[21] App. to Opening Br. at A532.