**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1235
_____

UNITED STATES OF AMERICA

v.

FUQUAN HILL,
                    Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 1:23-cr-00407-001)
Chief District Judge: Honorable Renee M. Bumb

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 19, 2026

Before: MATEY, FREEMAN and CHUNG, *Circuit Judges*

(Opinion filed: April 9, 2026)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FREEMAN, *Circuit Judge*.

Fuquan Hill pleaded guilty to a drug offense and was sentenced to 119 months' imprisonment. On appeal, he argues that the District Court impermissibly confined his right of allocution. Because any error with respect to his right of allocution was not plain, we will affirm the judgment.

**I**

The facts underlying Hill's conviction are undisputed. In 2021, law enforcement officers saw Hill sell drugs, arrested him, and found hundreds of envelopes and vials of drugs in his fanny pack. He was charged with possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

Hill and the government entered a written plea agreement under which Hill would plead guilty to the charge and be sentenced to between 60 to 78 months' imprisonment followed by three years of supervised release. The District Court accepted Hill's guilty plea in May 2023 but reserved its decision about whether to accept the agreed-upon sentence.

Meanwhile, the Probation Office calculated an advisory Sentencing Guidelines range of 151 to 188 months' imprisonment, accounting for the career offender sentencing enhancement. Despite that Guidelines range, the government argued to the court that a sentence between 60 and 78 months' imprisonment was appropriate under the 18 U.S.C. § 3553(a) factors. For his part, Hill argued for a 60-month sentence.

In May 2024, the District Court informed the parties that it was rejecting their plea agreement. Three months later, the parties entered into a new agreement. In it, they

stipulated that a sentence of 77 to 96 months' imprisonment is reasonable given the § 3553(a) factors. However, unlike the prior agreement, this stipulated range would not bind the District Court. Hill pleaded guilty pursuant to the new plea agreement in January 2025, and the court proceeded immediately to sentencing.

After hearing from counsel, the court asked Hill if he wished to address the court. Hill said yes and proceeded to say he was "not giving excuses" and was "tak[ing] all the responsibility for everything [he] did." App. 105–06. Then the following exchange occurred:

> DEFENDANT: But . . . me growing up, it was hard. But I'm not going to blame that either, you know what I mean? Because I'm grown now, you know, and –
>
> COURT: When are you going to learn your lesson?
>
> DEFENDANT: When?
>
> COURT: Yeah.
>
> DEFENDANT: I think I learned that the day I got here.
>
> COURT: Why did it take this? Why did it take – why did it have to come to this?
>
> DEFENDANT: You know, because before, my state bids was basically easy . . . .
>
> COURT: Yeah, exactly, which is why this isn't going to be.

App. 106.

Hill continued, mentioning the bloodshed he had witnessed in his life, how he was trying to change, and how he missed his daughter and other family members. The court responded, "You weren't thinking about them when you were dealing drugs?" App. 107.

3

Hill said he had been thinking about his loved ones "but then I just thought about like, ah, you know, I want them to have everything. It's on me." App. 107.

The court then asked Hill if he had thought about the victims, and Hill responded that he had. The court continued:

> COURT: You thought about the victims, the ones you were putting, ingesting [sic] the cancer into?
>
> DEFENDANT: Yes.
>
> COURT: You thought about them? You thought about the ones who were, you know, all doped up on the street overdosing; you thought about them?
>
> DEFENDANT: Yes.
>
> COURT: You did?
>
> DEFENDANT: Yes, I thought about victims.
>
> COURT: And you didn't care.
>
> DEFENDANT: I'm not going to say I didn't care. It was just at that time, it was just, you know, I need this, hoping I can get this, and still didn't get what I wanted. So everything I did was for nothing.
>
> COURT: What's that mean?
>
> DEFENDANT: I did everything for nothing. I'm talking about drug dealing. I did it for nothing because I have nothing.
>
> COURT: Well, let's explore that. So if you had done your drug dealing and you owned three mansions from the illegal proceeds –
>
> DEFENDANT: No.
>
> COURT: – you'd be happy and –

4

DEFENDANT: I'm not saying that either, Your Honor.

COURT: What are you saying?

DEFENDANT: I'm not saying that. I have no patience. I'm going to say that, I had no patience.

App. 108–09. Hill went on to say he would not have committed his crimes if he had a job but he was unable to get one before he was imprisoned again for drug dealing. That led to the following exchange:

COURT: . . . [W]hat I'm hearing is, I don't even think you appreciate just how bad your conduct was over the years.

DEFENDANT: No; I appreciate it.

COURT: I don't think you – let me finish. I don't think you realize just how you contributed to the cancer in this society. And your attorney stands up and says that people will look at your case and say, well, six and a half years for a mere street drug dealer is enough. No. Look at the history of this street drug dealer, in and out, in and out, in and out of the system, right?

DEFENDANT: Yes.

COURT: You were willing to do your time and come back out on the streets and just ruin people's lives, destroy lives. I mean, think about it. And then you have a family on top of it and you take their lives from them because of your addiction, your greed and your selfishness. Did I about sum that up?

DEFENDANT: Yes.

COURT: Yeah. So what's the right sentence for you? Should [it be] 20 years, 30 years? Because if you get out, you're going back to the same old routine, it sounds to me.

DEFENDANT: No, not this time. Not this time, Your Honor.

COURT: I don't get the sense, if you want me to be perfectly blunt, I don't get the sense that you're entirely remorseful for what you have done here, and that bothers me.

DEFENDANT: No, I'm not remorseful.

COURT: You're not remorseful?

DEFENDANT: No. I'm just telling the truth. Everything I did was bad. I know that.

COURT: And you don't feel bad about it?

DEFENDANT: Yes. I feel bad about everything I did.

COURT: That's what remorseful means.

DEFENDANT: Oh. Did I feel bad about it?

COURT: I get the sense you don't.

DEFENDANT: No, I do feel bad about it.

COURT: I get the sense you don't. Because you're just like tisk, tisk, I was just not making much money so what's the big deal.

DEFENDANT: No; it wasn't that.

COURT: What?

DEFENDANT: It wasn't that, Your Honor. You know, addiction and all that type stuff, that's what really, really brought me out really, you know what I'm saying? Just trying to just keep pills, pills, pills, pills, weed, liquor, pills, pills, pills.

COURT: And through all of this you got no help?

DEFENDANT: No.

COURT: You ever ask for help through the state system?

DEFENDANT: No, ma'am. I ask now, though.

COURT: You what?

DEFENDANT: I said, I ask now.

COURT: Anything else you want to say?

DEFENDANT: No, ma'am.

App. 110–12.

After hearing additional arguments from counsel, the court rejected the parties' suggested range of 77 to 96 months' imprisonment and imposed a sentence of 119 months in prison, which was a 32-month downward variance from the bottom of the Guidelines range. It also imposed a six-year term of supervised release, which was a three-year upward variance from the Guidelines term. Hill timely appealed.

## II[1]

Hill did not preserve an argument that the District Court violated his right of allocution, so we review his claim for plain error. *United States v. Moreno*, 809 F.3d 766, 773 (3d Cir. 2016). "For reversible plain error to exist, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Tai*, 750 F.3d 309, 313–14 (3d Cir. 2014)). An error is "plain" if it is "clear or obvious." *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016).

---

[1] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

"The right of allocution is deeply rooted in our legal tradition" and is codified in Federal Rule of Criminal Procedure 32. *United States v. Ward*, 732 F.3d 175, 180–81 (3d Cir. 2013) (citation modified). Under Rule 32, before imposing sentence, a court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). "[T]he critical purpose of Rule 32 is threefold: (1) to allow the defendant to present mitigating circumstances, (2) to permit the defendant to present personal characteristics to enable the sentencing court to craft an individualized sentence, and (3) to preserve the appearance of fairness in the criminal justice system." *Ward*, 732 F.3d at 181. Allocution "is designed to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances." *Id*. (quoting *United States v. De Alba Pagan*, 33 F.3d 125, 129 (1st Cir. 1994)). It also "maximiz[es] the perceived equity of the [sentencing] process because the defendant is given the right to speak on any subject of his choosing prior to the imposition of sentence." *Id*. at 181–82 (citation modified).

Here, Hill was invited to address the sentencing court and took that opportunity to speak about several mitigating factors. He nonetheless argues that the court impermissibly confined his right of allocution by "interrupting him, diverting him from what he was trying to say, challenging his credibility, and chastising him." Opening Br. 30. In support of his argument, he primarily relies on (1) Second Circuit authority that Rule 32 requires a defendant to "be allowed a meaningful right to express relevant mitigating information before an attentive and receptive district judge," *United States v.*

8

*Li*, 115 F.3d 125, 133 (2d Cir. 1997); (2) a Ninth Circuit opinion concluding that two appellants' right to allocution was not violated when the "district judge [did not] intimidate[] appellants or deter[] them from speaking," *United States v. Mack*, 200 F.3d 653, 658 (9th Cir. 2000); and (3) a non-precedential opinion in which a panel of this Court posited that "it would be possible for a district court to violate a defendant's right of allocution during a sentencing proceeding by confining the exercise of that right," *United States v. Mason*, 782 F. App'x 114, 118 (3d Cir. 2019).

Any error at Hill's sentencing was not plain. Notwithstanding the District Court's frequent interjections and skeptical commentary, the court permitted Hill to speak about several areas of mitigation. It also asked him if he wanted to say anything else before the allocution concluded, and Hill declined that offer. Even accounting for authority from other courts of appeals, we cannot say any error here was "clear or obvious." *Molina-Martinez*, 578 U.S. at 194; *see United States v. Bowyer*, 117 F.4th 950, 953 (7th Cir. 2024) (holding that a judge's remarks which "veered into a running commentary" during the defendant's allocution did not amount to plain error where the judge "never attempted to end the allocution early" or preclude the defendant from speaking, and in fact "solicited further comments at the end of the allocution"); *cf. Li*, 115 F.3d at 133–34 (granting relief on a preserved Rule 32 claim where the district court's "repeated interruptions" and termination of the allocution after just over two pages of sentencing transcript did not allow the defendant to "speak meaningfully of the factors that she legitimately thought relevant to the mitigation of her sentence").

\*   \*   \*

9

For the reasons set forth above, we will affirm the judgment.